ABELSON HERRON HALPERN LLP
   Marc D. Halpern (State Bar No. 216426)
   Vincent H. Herron (State Bar No. 172290)
   Lisa Von Eschen (State Bar No. 156798)
600 West Broadway, Suite 1060
San Diego, California 92101
Telephone: (619) 618-7000
Facsimile: (619) 618-7001
mhalpern@abelsonherron.com
vherron@abelsonherron.com
lvoneschen@abelsonherron.com

Attorneys for Plaintiff
MILLENNIUM LABORATORIES, INC.

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLENNIUM LABORATORIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., <br><br> Defendant. | CASE NO. 3:12-cv-02280-BAS-KSC <br><br> **[REDACTED]** <br><br> **PLAINTIFF MILLENNIUM LABORATORIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **Date: June 23, 2014** <br> **Ctrm: 4B (Judge Bashant)** <br><br> **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |



# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................... 3

    A.  The Policy: Coverage for "Subpoenas," Advancement of Costs ........ 3

    B.  The Claim: The DOJ's Investigation of ML ....................................... 4

    C.  AWAC "Agrees" To Defense Coverage ............................................. 5

    D.  This Court's Summary Judgment Ruling ........................................... 6

    E.  Discovery Confirms the Scope of the DOJ Investigation ................... 7

III.  SUMMARY JUDGMENT STANDARD IN INSURANCE
      CONTEXT ............................................................................................ 10

IV.  AWAC OWES COVERAGE FOR THE DOJ INVESTIGATION ........... 11

    A.  The DOJ Investigation Triggers Coverage ....................................... 11

    B.  The Full Limit of the Policy Applies to the DOJ Investigation ......... 11

        1.  HIPAA Claims Coverage ....................................................... 11

        2.  Company Claims Coverage .................................................... 12

        3.  Regulatory Wrongful Acts ...................................................... 13

V.  THE SO-CALLED "PRIOR CLAIMS EXCLUSIONS" DO NOT
     BAR COVERAGE ................................................................................ 15

    A.  Exclusions D and E Do Not Apply ................................................... 15

    B.  Endorsement 7 Does Not Apply ....................................................... 18

    C.  Section D of the "Notice of Claim" Section of the Policy
       Does Not Exclude Coverage for the DOJ Investigation ................... 20

VI.  AWAC CANNOT DISPUTE THAT IT HAS BREACHED ITS
      DUTY TO ADVANCE DEFENSE COSTS ........................................... 21

VII.  CONCLUSION ................................................................................... 24



1

## **TABLE OF AUTHORITIES**

2

### ***FEDERAL CASES***

3
Acacia Research Corp. v. Nat'l Union Fire Ins. Co.,
4
    2008 U.S. Dist. LEXIS 96955 (C.D. Cal. Feb. 8, 2008) ................................. 23

5
Ace Am. Ins. Co. v. Ascend One Corp.,
6
    570 F.Supp. 2d 789 (D. Md. 2008) ................................................................. 18

7
Cmty. Health Ctr. of Buffalo, Inc. v. Rsui Indem. Co.,
    2012 U.S. Dist. LEXIS 28934 (W.D.N.Y. Mar. 5, 2012) ............................... 18
8

9
Endurance Am. Specialty Ins. Co. v. WFP Sec. Corp.,
    2012 U.S. Dist. LEXIS 153864 (S.D. Cal. Sept. 28, 2012) ................ 11, 17, 18
10

11
Intel Corp. v. Hartford Accident & Indem. Co.,
    952 F.2d 1551 (N.D. Cal. Apr. 18, 1991) ...................................................... 10
12

13
LaGrassa v. Burlington Ins. Co.,
    2012 U.S. Dist. LEXIS 168263 (E.D. Cal. Nov. 26, 2012) ............................ 10

14
Legacy Partners, Inc. v. Clarendon Am. Ins. Co.,
15
    2010 U.S. Dist. LEXIS 36966 (S.D. Cal. Apr. 14, 2010) ............................... 23

16
Olympic Club v. Those Interested Underwriters at Lloyd's, London,
17
    991 F.2d 497 (9th Cir. 1993) .......................................................................... 23

18
Pereira v. Nat'l Union Fire Ins. Co.,
19
    525 F. Supp. 2d 370 (S.D.N.Y. 2007) ........................................................... 18

20
Raychem Corp. v. Fed. Ins. Co.,
    853 F. Supp. 1170 (N.D. Cal. 1994) .............................................................. 14
21

22
Reynolds v. Allstate Ins. Co.,
    855 F. Supp. 2d (N.D. Cal. Jan. 19, 2012) .................................................... 20
23

### ***STATE CASES***

24
AIU Ins. Co. v. Superior Court,
25
    799 P.2d 1253 (Cal. 1990) ....................................................................... 13, 21

26
Century Sur. Co. v. Polisso,
27
    139 Cal. App. 4th 922 (Cal. App. 2006) ........................................................ 14

28



Haynes v. Farmers Ins. Exchange,
    32 Cal. 4th 1198 (2004).............................................................................. 19, 20

MacKinnon v. Truck Ins. Exchange,
    31 Cal. 4th 635 (2003)....................................................................... 10, 19, 20, 21

Minkler v. Safeco Inc. Co.,
    49 Cal. 4th 315 (2010)........................................................................... 10, 19

Waller v. Truck Exchange, Inc.,
    11 Cal. 4th 1 (1995)................................................................................. 10

***FEDERAL STATUTES***

███████████ .............................................................................. 4, 12

███████████ ........................................................................ 4, 12, 14

███████ ........................................................................................ 4, 12

███████ ........................................................................................ 4, 12

███████ ........................................................................................ 4, 12

███████ ........................................................................................ 4, 12

███████ ........................................................................................ 4, 12

████████ ....................................................................................... 4, 12

████████ ....................................................................................... 4, 12

███████ ........................................................................................ 4, 12

████████ ....................................................................................... 4, 12

███████ ........................................................................................ 4, 12

███████ ........................................................................................ 4, 12

███████ ........................................................................................ 4, 12

***FEDERAL RULES***

Federal Rule of Civil Procedure 56(a)................................................... 10



# I.     __Introduction__

Plaintiff Millennium Laboratories, Inc. ("ML") bought a directors and officers insurance policy from Defendant Allied World Assurance Company (U.S.), Inc. ("AWAC"), which specifically provided ML coverage for government investigations launched by subpoena during the policy period December 1, 2011 to December 1, 2012.  The Policy provides $5 million of coverage, and requires AWAC to advance defense costs to ML prior to any final disposition of a claim or investigation.  In March 2012, the United States Department of Justice ("DOJ") began investigating certain ML business practices by serving ML with the ███ ██ Health Insurance Portability and Accountability Act of 1996 ████████ ("HIPAA ████████").

ML tendered the defense of the Investigation and, in response, AWAC *agreed* to defense coverage.  By implication, AWAC *admitted* that no exclusions applied (and none were cited by AWAC).  Thereafter, AWAC began paying for the defense.  Nonetheless, AWAC curiously argued that defense coverage for the investigation was limited to a $100,000 "regulatory wrongful acts" sublimit. This sublimit was much (much) less coverage than the full $5 million limits that apply for defense of subpoenas concerning potential wrongful acts or HIPAA violations (like the HIPAA ████████).  ML disagreed as to the sublimit, but was forced to bring this lawsuit when AWAC refused to acknowledge the full applicable limits.

Once this coverage litigation started, however, a new set of lawyers for AWAC jumped in and, on behalf of AWAC, took a revised position that defense coverage may be barred by exclusions in the Policy.  Toward that end, AWAC now contends that either some or all of the DOJ Investigation is excluded by certain "prior claims" exclusions because ████████████████████ ████████ he subject of prior lawsuits against ML.  These newly referenced exclusions appear to be AWAC's entire defense against providing coverage.



ML'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1    Before the parties took significant discovery, ML moved for summary

2    judgment of AWAC's defense obligation, arguing that the ████████████████

3    ██  enough to establish defense coverage.  The Court, however, felt that under

4    this type of defense coverage, more detail about what the DOJ was actually

5    investigating could be relevant.  Because such discovery had not been conducted

6    yet, the Court denied ML's motion without prejudice so that such discovery could

7    commence in earnest.

8    Far-reaching discovery has now been conducted by the parties, and it is clear

9    that, as a matter of law and undisputed fact, AWAC cannot meet its burden on the

10   exclusionary defenses. First, ███████████████████████████

11   ███████████████████████████  contain no specific "claims" or "allegations."

12   As such, it is impossible for AWAC (or ML) to know with certainty ██████████

13   ████████████████████████████████████████

14   ████  Second, even if AWAC could show the DOJ is investigating ██████████

15   ████████████████  the subject of prior lawsuits, discovery here proves

16   that the DOJ is also clearly investigating ████████████████████████

17   *never* the subject of prior lawsuits.  As such, the "prior claims" exclusions do *not*

18   exclude coverage as to those issues.  Perhaps most importantly, even if AWAC can

19   show that some part of the DOJ Investigation is excluded, a specific provision of

20   the Policy unequivocally requires AWAC to advance defense costs to ML, and

21   then seek to recoup those costs later if it turns out that costs were advanced for

22   non-covered items.

23   ML is entitled to summary judgment that AWAC owes defense coverage for

24   the DOJ investigation under the HIPAA and wrongful acts coverages with $5

25   million limits, and entitled to a ruling that AWAC has failed in its defense

26   coverage obligations.

27

28



2

## II.   FACTUAL BACKGROUND

ML primarily provides urine drug testing to doctors prescribing medications to patients suffering from chronic pain or addiction.  The goal of the testing is to help physicians clinically care for their patients by identifying whether they are properly taking medications, diverting the medication to non-patients, and/or consuming other prescribed or illicit drugs.  Price Aff. at ¶ 6.  The majority of ML's services are paid for by private insurance programs, with most of the rest covered by government programs like Medicare or Medicaid.  Id. at ¶ 7.

### A.   The Policy: Coverage for "Subpoenas," Advancement of Costs

In 2011, ML purchased a Forcefield Healthcare Organizations Directors and Officers Liability Policy, policy number 0307-1511, for the period of December 1, 2011 to December 1, 2012 (the "Policy") from AWAC.  The Policy contains several insuring agreements, two of which are particularly relevant here.  First, the Policy provides $5 million of "HIPAA Claims Coverage" for any liability:

> arising from a **Claim**, first made during the **Policy Period** . . . against [ML or other insureds] for an actual or alleged act, error or omission of an **Insured** in violation of [HIPAA] and any rules or regulations - promulgated thereunder, and any amendments thereto . . .

Id., Ex. A at 44-45 (§VI.F); Halpern Aff., Ex. Q at 478-479 (RFA No. 11).  The policy also provides $5 million in "Company Claims Coverage" for any "**Loss** arising from a **Claim**, first made during the **Policy Period** . . . against [ML] for a **Wrongful Act**."  Id., Ex. A at 29 (§ I.C); Halpern Aff., Ex. Q at 479-480 (RFA No. 12).  The definition of "Wrongful Act" includes "any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement by the **Company**."  Price Aff., Ex. A at 40 (§II.GG).

Specifically relevant here, when ML purchased the Policy, it negotiated an endorsement that added the word "subpoenas" to the definition of "Claim."  Price Aff., Ex. A, Endorsement No. 9, at p. 23.  With this addition, the Policy explicitly provides coverage if ML had to defend against a subpoena.



1  Finally, Section VI.E of the Policy states:

2  At the request of the **Named Insured**, **Insurer** shall reimburse
3  **Defense Costs** in excess of the Retention prior to the final disposition
   of any claim, subject to all other terms and conditions in the Policy.
4  In the event and to the extent that the **Insureds** shall not be entitled to
   payment of such **Defense Costs** . . . such payments by the **Insurer**
5  shall be repaid to the **Insurer** by the **Insureds** . . .”

6  Id., Ex. A at 44 (§VI.E).

7  **B.    The Claim: The DOJ's Investigation of ML**

8  On or about March 27, 2012, the DOJ served ML with a subpoena seeking

9  the production of ███████████████████████████████████. Id. at ¶

10 9, Ex. B.  The March 2012 Subpoena was served with a cover letter stating that the

11 subpoena was a "HIPAA Subpoena," "[i]ssued under authority of Section 248 of

12 [HIPAA]."  Id., Ex. B at 54-55.  The letter also indicted that the information was

13 being sought by the DOJ "in its capacity as a health oversight agency, and this

14 information is necessary to further health oversight activities."  Id., Ex. B at 54.

15 The March 2012 Subpoena itself explained that the DOJ sought the

16 documents because they:

17
18
19 ████████████████████████████████████████
20
21 Id., Ex. B at 55.  Several ███████████████████████████

22 ████ were created by HIPAA.  See Halpern Aff., Ex. P.

23 In the following months, ████████████████████████

24 ██████████████  See Price Aff., Exs. C-G.  ████████████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████

27 Id., Exs. C-G.

28



---

4

## C. AWAC "Agrees" To Defense Coverage

On April 4, 2012, ML tendered the defense of the March 2012 Subpoena to AWAC under the Policy seeking "full coverage, including but not limited to defense and indemnity, available under the Policy . . ." Price Aff., Ex. I.  In response, AWAC's claims handler, Joe Sappington, had a telephone call with ML's general counsel where Mr. Sappington admitted that AWAC must provide defense coverage, and discussed ML's choice of counsel to defend the Investigation.  Halpern Aff., Exs. M at 279 and O at 297 (Sappington Depo.; Price Depo.).  On May 8, 2012, AWAC wrote to confirm that the March 2012 Subpoena constituted a "Claim" under the Policy, and that ML's defense costs constituted a covered "Loss."  Price Aff. at ¶ 19, Ex. J at 103; see also Halpern Aff., Ex. Q at 478 (RFA No. 9).  Nowhere in the May 8, 2012 letter did AWAC ever suggest that the defense coverage might be excluded.  AWAC's letter, however, did place one limitation on the defense: specifically, AWAC took the position that the March 2012 Subpoena was investigating only "Regulatory Wrongful Acts" and, as a result, AWAC argued that ML was entitled only to $100,000 in defense coverage (rather than the full $5 million limit).[1]  Price Aff., Ex. J at 103-104.

On July 2, 2012, ML responded making clear the full $5,000,000 in coverage was owed.  Indeed, because the Subpoena was specifically (and expressly) issued under the HIPAA statutes, it unquestionably triggered the HIPAA Claims coverage, which has the full $5 million limit.  In addition, because the Subpoena purported to investigate "wrongful acts" as defined in the Policy, it

---

[1] "Regulatory Wrongful Acts" are limited to: (1) acts related to "(a) procedure coding; (b) bill, claim, cost report or data submissions; or (c) the calculation of managed care payments," solely with respect to "the Medicaid, Medicare, Federal Employee Health Benefit or TriCare Programs"; (2) "offer, acceptance or payment by any Insured in exchange for any patient referral(s), in violation of any state, local, federal law;" or (3) "offer, acceptance or payment by an Insured in violation of any state, local or federal antikickback law."  Price Aff., Ex. A at 38 (§II.BB).



ML'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1   also triggered Company Claims coverage, which is also subject to the $5 million

2   limit.  Either way, Millennium was entitled to the full $5 million limit of the Policy

3   for defense coverage.  Halpern Aff., Exs. A and B.

4     On September 14, 2012, AWAC responded, again conceding that the Policy

5   provided defense coverage for the DOJ investigation, but sticking to the position

6   that the $100,000 sublimit applies.  Halpern Aff, Ex. C.  Notably, for the first time,

7   AWAC also contended that the ██████ "potentially" implicated certain "prior

8   claims" and "specific claims" exclusions in the Policy because the DOJ was

9   potentially investigating ████████████ the subject of prior lawsuits.

10  That is, AWAC suggested that coverage for the Investigation "might be" excluded.

11  On December 17, 2012, however, despite AWAC's cite to the various exclusions,

12  AWAC paid ML $100,000.  Price Aff., ¶¶ 22-35.  In other words, AWAC *did not*

13  deny or delay defense coverage on the basis of these exclusions: rather it *paid* ML

14  the *full limit* it contended was available under the Policy for the DOJ Investigation.

15    When AWAC refused to acknowledge that the full $5,000,000 in defense

16  coverage was available for the DOJ Investigation, ML filed this lawsuit.  Once this

17  lawsuit was filed, AWAC began reversing course on its admission that the DOJ

18  Investigation triggered AWAC's defense coverage obligations.  Indeed, months

19  later, Joe Sappington (the same AWAC claims handler who previously *admitted*

20  defense coverage) testified in deposition that AWAC was now "developing

21  coverage defenses," and had not actually made a final coverage determination.

22  Halpern Aff., Ex M at 280 (Sappington Depo.).

23    **D.**  **This Court's Summary Judgment Ruling**

24    On May 3, 2013, ML moved for Summary Judgment on $5 million of

25  defense coverage (under either the HIPAA Claims or Company Claims coverages)

26  for the DOJ investigation, arguing that full defense coverage was established by

27  the ██████ alone.  In response, AWAC argued that the "prior claims"

28  exclusions barred coverage to the extent the DOJ was investigating ████████



ML'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1   ████████████████ the subject of prior lawsuits against ML.  AWAC also argued

2   that discovery had not yet been conducted to determine the full scope of the DOJ

3   Investigation.

4        For its part, the Court held that AWAC was entitled to discovery on the

5   scope of the DOJ Investigation to determine whether and to what extent the DOJ

6   Investigation fell within the Policy's coverage.  As such, this Court denied the

7   summary judgment motion – but it denied the motion without prejudice so that

8   discovery could commence on the scope of the DOJ Investigation.  <u>See</u> Dkt. No.

9   73, Halpern Aff., Ex. E.  That discovery has now been conducted, and it *proves*

10  that coverage for the DOJ Investigation is not excluded.

11      **E.**    <u>**Discovery Confirms the Scope of the DOJ Investigation**</u>

12       Indeed, since the summary judgment ruling, AWAC has obtained ████

13  ████████████████████, including the documents produced by ML to the

14  DOJ, and all communications between ML and the DOJ.  AWAC also deposed

15  ML, ML's general counsel, three attorneys defending ML in the DOJ

16  Investigation, ████████████ who testified before the grand jury, and an

17  insurance broker involved in the placement of the Policy.  ████████████████

18  ████████████████████████████████.  Finally,

19  AWAC obtained correspondence, pleadings, discovery and document productions

20  from over half a dozen other lawsuits in which ML was a party, and ████

21  ████████████ documents from several non-parties.  Halpern Aff. at ¶

22  8.  Thereafter, AWAC served a sworn discovery response in which it identified

23  ████████████ being investigated by the DOJ that it ██████ excluded

24  because ██████ the subject of prior lawsuits.  <u>Id.</u>, Ex. R (Supplemental

25  Response to Interrogatory No. 23).

26       But the (extensive) discovery conducted by AWAC actually proves that the

27  DOJ is investigating ████████  More importantly, it proves beyond dispute

28  that the DOJ is investigating ████████████████████ *never* the



subject of any prior lawsuit against ML (and not identified by AWAC in discovery as part of its defense).  The investigation of ███████████, therefore, *cannot be excluded* by any exclusion in the Policy.  Just by way of example, ML's defense counsel met with Susan Winkler (then lead U.S. Attorney at the Massachusetts United States Attorney's Office) immediately after the March 2012 Subpoena was received.  Ms. Winkler confirmed that the DOJ was investigating, ████████████████████████████████████████████
████████████████████████████████████████ [2]  None of the prior lawsuits against ML ever challenged that business practice.
████████████████████████████████████████████
███████████████████████████████████████████████
█████████ indicates that the DOJ is investigating ██████████████████
█████████████ never the subject of prior lawsuits (and, therefore, ███ not excluded from coverage).  For example, ████████████████, it is clear that the DOJ is investigating:

- ██████████████████████████████████
  ██████████████████████████████████
  ███████████ [3]
- ██████████████████████████████████
  █████████████████████ [4]



[2] ████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████

[3] ██████████████████████████████████████████████
████████████████████████████████████



1   •   █████████████████████████████

2   ████████████████████████████████

3   ██████████████[5]

4   •   ████████████████████████

5   ███████████████████████████.[6]

6   •   ████████████████████████████

7   ████████████████████████████

8   ████████████████████[7]

9   •   ██████████████████████████████

10  ████████████████[8]

11  █████████   Investigation topics   ████   confirmed by   ████████████

12  ████████████   on   █████████████.

13  In December 2012, the DOJ asked ML for a ████████████   That ████

14  ████████, drafted by the DOJ, again confirms that the DOJ is investigating,

15  █████████████████████████████████

16  ████████████████████████████

17  ████████████████████████████████

18  ████████████████████████████"

19

20

21  [4]████████████████████████████

22  ████████████████████████████

23  [5]████████████████████████████

24  ██████████████████████████████

25  [6]████████████████████████████

26  ████████████████████████████

27  [7]████████████████████████

28  [8]████████████████████████████

1   Price Aff. ¶ 16; Ex. H.  Also relevant, the ███████ cites to same HIPAA

2   statutes as were cited in the ████████

3        This evidence further confirms that the DOJ is investigating ████

4   ████████ *never* the subject of any prior lawsuit.  As a result,

5   the DOJ Investigation of ███ issues is *not* excluded.  Certainly, it is legally

6   impossible for AWAC to meet its burden to show the ███ DOJ Investigation is

7   excluded by the "prior claims" exclusions.

8   **III.   SUMMARY JUDGMENT STANDARD IN INSURANCE CONTEXT**

9        Summary judgment is warranted, in whole or in part, where the pleadings,

10  discovery, and any affidavits show there is "no genuine issue as to any material

11  fact and the movant is entitled to judgment as a matter of law."  See FRCP 56(a).

12  Under California law, and as this Court recognized in its prior summary judgment

13  order, the "interpretation of an insurance policy is a question of law to be

14  performed by the Court."  Order at 5, citing Waller v. Truck Exchange, Inc., 11

15  Cal. 4th 1, 18 (1995); see also, LaGrassa v. Burlington Ins. Co., No. 11-CV-2730-

16  JAM-EFB, 2012 U.S. Dist. LEXIS 168263, at *8 (E.D. Cal. Nov. 26, 2012).

17       Also recognized by the Court, "the insured bears the burden of proving

18  coverage under the policy, and coverage is interpreted broadly in order to provide

19  the greatest possible protections to the insured."  Order at 6, citing Waller, 11 Cal.

20  4th at 16.  Once the insured shows that the Policy provides coverage, however, the

21  burden shifts to the insurer to try to show that an exclusion bars or limits coverage.

22  Intel Corp., 952 F.2d at 1557; MacKinnon, 31 Cal. 4th at 648.  Regarding this

23  analysis, and as the Court recognized, "exclusions are construed narrowly, and

24  must be proved by the insurer."  Order at 6, Minkler v. Safeco Inc. Co., 49 Cal. 4th

25  315, 322 (2010) ("clauses setting forth specific exclusions from coverage are

26  interpreted narrowly against the insurer.").  Toward that end, the insurer must

27  prove that any exclusionary clause is "*conspicuous, plain and clear*."  MacKinnon,

28  31 Cal. 4th at 648 (*emphasis* in original).



1   Because the burden is on the insurer, ML is not even required to "offer

2   evidence negating the insurer's claim." <u>Endurance Am. Specialty Ins. Co. v. WFP</u>

3   <u>Sec. Corp.</u>, Civil No. 11cv2611 JAH (KSC), 2012 U.S. Dist. LEXIS 153864, at *4

4   (S.D. Cal. Sept. 28, 2012).  That said, the evidence here actually proves that

5   coverage for the DOJ Investigation is *not* excluded.  Indeed, the evidence proves

6   that ███████ DOJ Investigation relates to ██████████████████████████

7   ████ *never* at issue in lawsuits pending against ML at the time the policy incepted.

8   As a result, coverage for the DOJ Investigation is not excluded.

9   **IV.   AWAC OWES COVERAGE FOR THE DOJ INVESTIGATION**

10   **A.   The DOJ Investigation Triggers Coverage**

11   Endorsement 9 of the Policy specifically provides defense coverage for

12   investigations commenced by subpoenas.  Here, of course, the DOJ Investigation

13   was commenced by the March 27, 2012 Subpoena, received during the AWAC

14   Policy period.  Those facts alone prove that coverage was triggered.  But the Court

15   need not closely scrutinize these facts because AWAC has already *admitted* that

16   the March 2012 Subpoena constituted a "Claim" under the Policy, and *admitted*

17   that the Policy provided coverage for defense costs.  Halpern Aff., Exs. Q at 478

18   (RFA Nos. 9, 10), and K (May 8, 2012 coverage letter).  Thereafter, in December

19   2012, AWAC paid ML $100,000 (the full limit of insurance according to AWAC).

20   Price Aff. at ¶ 34.  There can be no legitimate dispute that the DOJ Investigation

21   triggered coverage for defense costs under the Policy.

22   **B.   The Full Limit of the Policy Applies to the DOJ Investigation**

23   Although AWAC has admitted that coverage under the Policy is triggered, it

24   argues that only a $100,000 "Regulatory Wrongful Acts" sublimit applies.  AWAC

25   is wrong for a number of reasons.

26   ***1.   HIPAA Claims Coverage***

27   First, the "HIPAA Claims Coverage" in the Policy provides the full limit for

28   claims against ML for actual or alleged violations of HIPAA and any rules or



1   regulations promulgated thereunder.  Price Aff., Ex. A at 30 (§I.F.).  Here, there

2   can be no dispute that the March 27, 2012 Subpoena █████████████████████

3   ██████████████ specifically "issued under authority of Sec. 248 of [HIPAA]."

4   Price Aff., Exs. B-G.  The DOJ's March 2012 cover letter even referred to the

5   March 2012 Subpoena as a "HIPAA Subpoena."  Id., Ex. B  Moreover, the

6   ████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████

10  ██████████████████████████████████████████  Id., Exs. B-G.  The

11  language from the █████████████████████████████████████████████

12  ███████  See Halpern Aff., Ex. P at 383.[9]

13       As a result of all this, AWAC admitted that the █████████████████████

14  █████████████████████████████████████████████████████████

15  ██████████████████████████  Id., Ex. Q at 475-477 (RFA Nos. 2-5).  In

16  deposition, AWAC's corporate designee also testified that the referenced ████████

17  ███████ are part of HIPAA.  Id., Ex. M at 277-278 (Sappington Depo.).  Finally,

18  the DOJ's ████████████████████████████████████████████████████████

19  █████████████████████████  Price Aff., Ex. H.

20       There can be no serious question that the DOJ Investigation triggers HIPAA

21  Claims coverage in the Policy.  Price Aff., Ex. A at 30 (§I.F.)

22       **2.    *Company Claims Coverage***

23       Even had the DOJ Investigation not triggered HIPAA Claims Coverage, the

24  full $5 million limit would still be available because the Investigation triggers the

25  "Company Claims" insuring agreement.  Indeed, that provision provides the full

26

27  ───────────────────
    [9] For ease of reference for the Court, the entire HIPAA text, available at

28  http://www.gpo.gov/fdsys/pkg/PLAW-104publ191/content-detail.html, is attached
    as Exhibit P to the Affidavit of Marc Halpern.



ML'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1  coverage limit for any "Loss arising from a Claim . . . against [ML] for a Wrongful

2  Act."  Price Aff., Ex. A at 29 (§I.C.)  "Wrongful Acts" include "any actual or

3  alleged act, error, omission, neglect, breach of duty, misstatement or misleading

4  statement by the Company."  Id., Ex. A at 40 (§II.GG.)

5       Here, the ████████ explicitly confirm ████████████████████████

6  ████████████████████████████████ Id., Exs. B-G.  Moreover, the lead DOJ

7  attorney advised that she was investigating ████████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████

12 ████████████████████████████ See footnotes 2-8, *supra*.  Because the DOJ

13 Investigation concerns ████████████████████████████████████████

14 ████████████████████████████████████████ ML, the Policy's Company

15 Claims coverage is triggered as well.

### 3.    Regulatory Wrongful Acts

17      Notwithstanding the above, AWAC argues that *only* the $100,000

18 Regulatory Claims sub-limit is available for coverage.  The position is

19 indefensible.

20      As a preliminary matter, when a claim triggers multiple parts of a policy,

21 California law requires that the policy be interpreted and applied in the way that

22 *maximizes* coverage.  AIU Ins. Co. v. Superior Court, 799 P.2d 1253, 1264 (Cal.

23 1990) ("we generally interpret the coverage clauses of insurance policies broadly,

24 protecting the objectively reasonable expectations of the insured"); Montrose

25 Chem. Corp., 6 Cal. 4th at 300.  Even AWAC admits this much.  Price Aff., Ex. K

26 (████ coverage determination letter) (AWAC admission that when multiple

27 insuring agreements apply, the highest applicable limit governs).

28



1        Thus, if the DOJ Investigation triggered Regulatory Claims coverage, but

2   *also* triggered HIPAA Claims coverage and Company Claims coverage, then the

3   full $5 million limit of defense coverage would nonetheless be available to ML.

4   Said backwards, ML is entitled to only the $100,000 sublimit in coverage if the

5   DOJ Investigation triggers *only* Regulatory Claims coverage, and triggers *no other*

6   *coverage.*  AWAC, of course, has the burden on this issue, but AWAC cannot meet

7   that burden.  (Raychem Corp. v. Fed. Ins. Co., 853 F. Supp. 1170, 1175 (N.D. Cal.

8   1994) ("[T]he insurer bears the burden at trial of proving that a statutory or policy

9   exclusion or limitation applies."); Century Sur. Co. v. Polisso, 139 Cal. App. 4th

10  922, 951 (Cal. App. 2006) ("the insurer has the burden of showing the claim falls

11  within an exclusion, and exclusions are narrowly construed").

12       Specifically, Regulatory Claims are narrowly limited to three categories of

13  offenses: (1) acts related to "(a) procedure coding; (b) bill, claim, cost report or

14  data submissions; or (c) the calculation of managed care payments" *solely* with

15  respect to "the Medicaid, Medicare, Federal Employee Health Benefit or TriCare

16  Programs"; (2) "offer, acceptance or payment by any Insured in exchange for any

17  patient referral(s), in violation of any state, local, federal law"; or (3) "offer,

18  acceptance or payment by an Insured in violation of any state, local or federal

19  antikickback law."  Price Aff., Ex. A at 39 (§II.BB.)  But the DOJ Investigation

20  ████████████████████████████████████████

21      For example, ████████████████████████████████

22  ████████████████████████████████████████

23  ████████████████████████████████████

24  ████████████████████████████████████████

25  ██████████████████; Halpern Aff., Ex. P ██████ and, indeed, the DOJ is

26  specifically investigating ████████████████████████████████

27  ██████  Price Aff., Ex. C █████████████████  Indeed, ████████████ the

28  DOJ Investigation ████████████████████████

ML'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT



1    ██████████████████████████████████████████ <u>See</u>

2    footnotes 2-8, *supra*. ████████████████████████████

3    ████████████████████████████████████████

4    ████████████████████████████████████████

5    ██████   Price Aff., Ex. H (emphasis added).

6    Also important, ████████████████████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████

9    ████████████████   Halpern Aff., Ex. I at 238 ████████████   The

10   evidence, therefore, proves that the DOJ Investigation is (absolutely) ████████████

11   ██████████████████████   To the contrary, AWAC owes the full Policy

12   limits under the Policy.

13   **V.    <u>The So-Called "Prior Claims Exclusions" Do Not Bar Coverage</u>**

14   AWAC, of course, knows that the DOJ Investigation triggered coverage

15   under the Policy, and AWAC's initial coverage determination letter admitted as

16   much. AWAC's subsequent payment of the purported "full limit" of coverage also

17   confirms AWAC's knowledge that coverage was triggered. But AWAC now

18   contends that certain "prior claims" exclusions eliminate coverage for the DOJ

19   Investigation. The evidence proves otherwise, however, and in fact shows as a

20   matter of law and undisputed fact that AWAC cannot meet its burden for these

21   exclusions.

22   **A.    <u>Exclusions D and E Do Not Apply</u>**

23   The first of these exclusions is Exclusions D and E. Exclusion D states:

24   This Policy shall not cover any **Loss** in connection with any **Claim**:
     alleging, arising out of, based upon or attributable to, as of [December

25   1, 2011], any pending or prior: (1) litigation; or (2) administrative or

26   regulatory proceeding or investigation, of which an **Insured** had

27   notice, including any **Claim** alleging or derived from the same or
     essentially the same facts, or the same or related **Wrongful Acts**, as

28



alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

And Exclusion E states:

This Policy shall not cover any **Loss** in connection with any **Claim**: alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or the same or related **Wrongful Acts** alleged or contained, in any **Claim** which has been reported, or in any circumstances of which notice has been given, before [December 1, 2011], whether excess or underlying, of which this Policy is a renewal or replacement or which it may succeed in time.

In the first place, the ████████ contain no "allegations" whatsoever. Moreover, the DOJ has not actually charged ML with anything. Thus, AWAC cannot prove that any "allegation" from the DOJ is the same as an actual "allegation" in prior litigations. For the same reason, AWAC cannot prove that the DOJ is alleging something which is based on the identical set of facts or wrongful conduct as was the subject of a prior litigation.

While the parties (and ML in particular) would surely like to know ████ ██████ being investigated by the DOJ, the ████████ not intended to provide that information. <u>See</u> Judge Crawford's October 18, 2013 Order, Dkt. No. 103 at n.2 ("Federal authorities are frequently vague with respect to their investigative targets. The Court will not infer that Millennium, as the presumed target, knew or knows the exact scope of the investigation . . . ."). Thus, it is certainly possible that the DOJ ██████████████████████████ ████████ Even so, the evidence here proves that the DOJ is ████████ █████████████████████████████████████████ *not* part of any prior lawsuit.

For example, the evidence proves that DOJ is investigating, ████████ █████████████████████████████████████ █████████████████████████████████████ █████████████████████████████████████



1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████ was ever the subject

3 of a prior lawsuit.  Indeed, ████████████████████████████

4 ██████████████████████████████████████

5 ███████████  It simply could not have been the subject of any prior lawsuit

6 pending at the Policy inception date.  Moreover, this issue is already conceded by

7 AWAC – indeed, AWAC was asked in discovery to identify the specific

8 components of the DOJ Investigation which relate to prior litigations, and in

9 response, AWAC did not identify ██████████ as prior issues in prior

10 litigations.  Halpern Aff, Ex. R (Supplemental Response to Interrogatory No. 23).

11 This evidence makes it impossible for AWAC to prove that the DOJ is solely

12 investigating ████ from prior lawsuits (and in fact, as shown above, and discussed

13 further below, that is very far from the case).

14     Importantly, this conclusion remains *even if* it turns out that the DOJ is

15 investigating █████████████████ the subject of prior lawsuits.  That

16 is, AWAC will undoubtedly point to select ████████████  or snippets of

17 deposition testimony, and argue that ███████████ being investigated

18 by the DOJ seem similar to business practices which were at issue in prior

19 lawsuits.  But the DOJ has not made any actual "allegations," and so AWAC's

20 speculation is not enough to prove that an exclusion applies.  At the very least,

21 coverage is not excluded for the DOJ's Investigation into ██████████

22 ███████ not the subject of prior lawsuits against ML.

23     <u>Endurance American Specialty Insurance Company</u> is right on point.  There,

24 the insured was covered by an insurance policy that had a "prior claims" exclusion

25 similar to the one here.  Ultimately, the insured was accused of misrepresentations

26 related to nine separate investments, four of which were at issue in a prior

27 arbitration, but five of which unrelated to the prior arbitration.  Because portions of

28 the new arbitration were not based entirely upon, arising from, or in consequence



1    of claims in the prior arbitration, the Court held that the exclusion did *not* preclude

2    coverage for those portions.  <u>Endurance</u>, 2012 U.S. Dist. LEXIS 153864, at *25.

3    The Court confirmed that the exclusion did not "clearly exclude claims involving

4    both related and unrelated issues, securities and parties." <u>Id.</u> at 29.

5         <u>Pereira v. Nat'l Union Fire Ins. Co.</u>, 525 F. Supp. 2d 370 (S.D.N.Y. 2007) is

6    also instructive.  In <u>Pereira</u>, the Court was required to parse through an underlying

7    judgment to determine whether a prior claims exclusion barred coverage.  Relevant

8    here, the <u>Pereira</u> Court determined some portions of the judgment were excluded

9    by the "prior claims" exclusion, but that other portions of the judgment were not

10   unambiguously excluded because those portions were not related to prior claims.

11   <u>Pereira</u>, 525 F. Supp. 2d at 380.  Crucially important, rather than apply the

12   exclusion wholesale to the entire judgment, the Court evaluated the exclusion with

13   respect to *each aspect* of the judgment separately to determine whether any

14   specific claim was related to a prior litigation.  <u>Id.</u> at 377-380.[10]

15        **B.    <u>Endorsement 7 Does Not Apply</u>**

16        Endorsement 7 also does not bar coverage.  Endorsement 7 reads:

17        No coverage will be available for **Loss** from any **Claim** based upon,
         arising out of, directly or indirectly resulting from, in consequence of,
18        or in any way involving: Ameritox, Ltd. File No's. 444.210 and

19

20

---

21   [10] <u>See also</u> <u>Ace Am. Ins. Co. v. Ascend One Corp.</u>, 570 F. Supp. 2d 789 (D. Md.
     2008) (finding coverage for a Subpoena investigating the policyholder's continued
22   business practices that were at issue in a prior class action because to hold that they
     were barred by related claims exclusion would bar coverage for any claim against
23   the policyholder based on the way it does business); <u>Cmty. Health Ctr. of Buffalo,</u>
     <u>Inc. v. Rsui Indem. Co.</u>, 10-CV-813S, 2012 U.S. Dist. LEXIS 28934, at *15
24   (W.D.N.Y. Mar. 5, 2012) (declining to apply prior claim exclusion because
     "[t]here is not, however, any specific and clear language excluding causes of action
25   that would otherwise be covered under the Policy based on the mere fact that they
     appear in the same complaint as a cause of action for which coverage is excluded.
26   This Court declines to interpret this section expansively to exclude from coverage
     such factually and legally distinct causes of action.")
27

28



444.224;  Aegis  Sciences  Corporation  File  No.  444.213;  Robert Cunningham File No. 444.215; DOJ File No. 444.219.

AWAC contends that the endorsement bars coverage for claims related to specific lawsuits.  But the endorsement itself does not refer to any lawsuit – rather, it refers to file numbers.  Those file numbers come from a law firm that represented London/XN Insurance (ML's prior D&O insurer), but AWAC admits that it did not even know what litigations were included in these file numbers when it drafted the Policy.  Halpern Aff., Ex. N at 287-289 (Soteres Depo.).  Indeed, AWAC never even looked at the files related to these claim numbers when it wrote the Policy (and, therefore, could not have known what the files contained), let alone the litigations to which the file numbers applied.  Id. at 290 (Sotores Depo.).  Since AWAC even did not know what this exclusion refers to at the time it was drafted, AWAC can hardly establish that the exclusion is "plain and clear." MacKinnon, 31 Cal. 4th at 648; see also Haynes, 32 Cal. 4th at 1212 (burden is on insurer to phrase exclusions "in clear and unmistakable language").  Certainly, there is no evidence whatsoever that the DOJ is investigating ███████████ ████████████████████████████.  That is, the DOJ Investigation is not based upon or arising out of ████████████.

Despite all this, AWAC demands that the file numbers actually refer to specific lawsuits, and that the exclusion bars coverage for claims related to issues addressed in those lawsuits.  The expansive interpretation, of course, is legally impossible because exclusions must be "interpreted narrowly against the insurer." Minkler, supra, 49 Cal. 4th at 322.  But even if this expansive reading were given to the Endorsement, the exclusion would amount to little more than a restatement of Exclusions D and E which both seek to exclude coverage for claims made in prior lawsuits against ML.  But because the DOJ Investigation concerns ██████████ ████████████████████████ not the subject of prior lawsuits, as a matter of


Abelson Herron Halpern

law and undisputed fact, even AWAC's expanded interpretation of the exclusion does not exclude coverage ████████████████████. *See* Section E, *supra*.

### C.   Section D of the "Notice of Claim" Section of the Policy Does Not Exclude Coverage for the DOJ Investigation

AWAC also appears to contend that a "Related Acts" provision excludes coverage.[11] But the provision is not even an exclusion – indeed, rather than being enumerated in the "exclusion" section of the Policy, it is buried in Section D of the "Notice of Claim" section of the Policy. As this Court already confirmed in a prior summary judgment order, under California law, "in the absence of clear policy language that the provision may be used to deny coverage, the Court will not read the related acts provision to act as an exclusion." Halpern Aff., Ex. T (MSJ Order in the related case of <u>Millennium Laboratories, Inc. v. Darwin Select Ins. Co.</u>, 3:12-CV-02742, p. 13, *citing* <u>Haynes</u>, 32 Cal. 4th at 1212.)[12]

But even assuming AWAC secretly intended the Related Acts provision to act as an exclusion, it still would not bar coverage here. In the first place, DOJ has not actually articulated specific "claims" or allegations against ML, and so it is impossible for AWAC to prove that the DOJ Investigation is "related" to any prior claim or lawsuit. Moreover, the evidence proves that the DOJ is investigating ██████████████████████████ *not* related to any business practices that

---

[11] Related Claims is defined as "all **Claims** for **Wrongful Acts** based upon, arising out of, directly or indirectly resulting from, or in consequence of, the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events."

[12] According to <u>Haynes</u>, it is a "rigid" rule that exclusions must be "positioned in a place and printed in a form which would attract a reader's attention." 32 Cal. 4th at 1207 and 1211. This is true because the burden is on the insurer "to phrase exceptions and exclusions in clear and unmistakable language." <u>MacKinnon</u>, 31 Cal. 4th at 648. "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." <u>Id.</u>; <u>Reynolds</u>, 855 F. Supp. 2d at 999 (holding that the intent is to protect "not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured." (internal quotations omitted)).



were the subject of any prior lawsuit.  Finally, the purported "exclusion" could never exclude coverage for HIPAA Claims because "Related Claims" means only "Claims for Wrongful Acts," but the HIPAA Claims coverage provides for ML coverage for things *other* than purported "Wrongful Acts."  *See* Price Aff., Ex. A (Policy at I.F).

## VI.   AWAC Cannot Dispute That It Has Breached Its Duty to Advance Defense Costs

The above proves that AWAC cannot meet its burden to show that the ████ DOJ Investigation is excluded from coverage.  But the analysis is academic.  Indeed, AWAC must admit that it specifically endorsed the Policy so that it provided coverage for investigations commenced by a subpoena.  Subpoenas, of course, do not contain any specific allegations of wrongdoing, and so they do not contain "claims."  This is particularly true in the context of grand jury subpoenas, where the target of the investigation has yet to be charged, and the DOJ might want to keep the potential "claims" a secret until it completes its investigation.  See Dkt. No. 103 at n.2 ("Federal authorities are frequently vague with respect to their investigative targets.")  As a result, the Prior Claims exclusions, which seek to exclude coverage for "claims" already litigated, cannot neatly be applied to a DOJ subpoena.  As a result of this confusion, even AWAC's claims handler (the same claims handler who initially admitted coverage) had to admit under oath that AWAC was wholly unable to determine if coverage was actually excluded.  See Halpern Aff., Ex. M at 280-281 (Sappington Depo.) (admission by AWAC's claims handler that AWAC has not actually denied coverage under any of these exclusions but, rather, is "still developing those coverage defenses").  To the extent the provision is ambiguous, the ambiguity must be interpreted in favor of coverage.  MacKinnon, 31 Cal. 4th at 648; AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 822 (1990).  It cannot give AWAC an excuse for delay in providing coverage.



As matters currently stand, however, AWAC has *admitted* coverage, and AWAC never reversed course and denied coverage.  Thus, the Policy either affirmatively provides coverage, or at least potentially provides coverage.  *Either way, AWAC is contractually obligated to "advance" defense costs to ML.*  Indeed, Section VI.E of the Policy requires:

> At the request of the [ML], [AWAC] shall reimburse **Defense Costs** in excess of the Retention prior to the final disposition of any claim, subject to all other terms and conditions in the Policy.  In the event and to the extent that the [ML] shall not be entitled to payment of such **Defense Costs** . . . such payments by [AWAC] shall be repaid to [AWAC] by [ML] . . . "

Two crucial points need to be made about this provision.  First, the reimbursement of defense fees is to occur "at the request of the Insured" and "*prior to* the final disposition" of the claim (emphasis added).  In the context of the DOJ Investigation, therefore, this provision requires AWAC to reimburse ML upon ML's request, even if that request comes *before* the Investigation is completed.  Which leads to the second crucial point – the timing of the reimbursement obligation creates the possibility that AWAC will reimburse some fees which, it is later determined, were not covered.  Indeed, the provision *presupposes* that this might happen.  But the provision also accounts for this possibility by giving AWAC the right to recoup any fees advanced, but which are later determined to be uncovered or excluded.  The combination of these two phrases makes it unequivocally clear that AWAC cannot wait until the entire DOJ Investigation is over (or even wait until AWAC's own investigation is over).  To the contrary, the provision unambiguously requires AWAC to promptly come to ML's aid with defense cost reimbursements (and allows for recoupment if uncovered fees are advanced).

This duty to advance defense costs *prior to* final resolution of an underlying claim must be subject to a "potential for coverage" standard similar (if not



1    identical) to the standard applied when a Policy imposes a duty to defend.[13]  Not

2    surprisingly, AWAC itself applied the "potential for coverage" standard when it

3    determined that the DOJ Investigation was covered.  See Halpern Aff., Ex. C (Sept

4    14, 2012 coverage letter at p. 1 ("the March 27th Subpoena *potentially triggers*

5    *coverage*"); p. 5 ("[AWAC] has concluded that the ██████ *potentially*

6    ██████ *coverage* . . . "); p. 6 (the ██████ *potentially* ████ *coverage* under

7    Insuring Agreement E," and the ██████ "*potentially* ████ *coverage* under

8    Insuring Agreement F . . . ") (emphasis added)).  Moreover, the "potential for

9    coverage" standard makes complete sense because application of an "actual

10   coverage" standard would read the recoupment provision entirely out of the Policy

11   – indeed, application of an "actual coverage" standard would mean that AWAC

12   would never be required to reimburse an expense until it was proved that the

13   expense was actually covered.  Thus, no uncovered expense would ever be

14   reimbursed, and there would never be any need for AWAC to seek recoupment.

15        All that said, AWAC has a duty to advance here *even if* this Court applies

16   some standard other than the "potential for coverage" standard.  Indeed, the

17   evidentiary record here proves that ██████ the DOJ Investigation trigger

18   HIPAA Claims and Company Claims coverages, and the evidentiary record proves

19   that ██████ the Investigation ████ *not* excluded.  Thus, even under a more

20

21   _____

     [13] See, e.g., Olympic Club v. Those Interested Underwriters at Lloyd's, London,

22   991 F.2d 497 (9th Cir. 1993) (applying potential for coverage standard to policy

     that required payment of defense costs but not duty to defend); Legacy Partners,

23   Inc. v. Clarendon Am. Ins. Co., Case No. 08cv920 BTM (CAB), 2010 U.S. Dist.

24   LEXIS 36966, at *15 (S.D. Cal. Apr. 14, 2010) ("…[the parties] dispute whether

     the potentiality standard applies to a policy imposing a duty to pay defense costs.

25   And under the language of the contract and Ninth Circuit precedent, it does.");

     Acacia Research Corp. v. Nat'l Union Fire Ins. Co., Case No. CV 05-501 PSG

26   (MLGx), 2008 U.S. Dist. LEXIS 96955, at *31 (C.D. Cal. Feb. 8, 2008) (holding

27   that because "the duty to advance defense costs is [as] broad as the duty to

     defend," the insurer was required to advance defense costs for potentially covered

28   claims).



ML'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

1  stringent standard, AWAC's "duty to advance" was still triggered by the DOJ

2  Investigation.  And because AWAC has thoroughly refused to reimburse ML's

3  substantial defense fees, AWAC is in breach of this provision.  Summary judgment

4  of AWAC's duty (and breach) must be granted.

5  **VII.   <u>CONCLUSION</u>**

6         The DOJ is investigating ML under authority of HIPAA, and investigating

7  ██████████████████████████████████████████.  As such, the DOJ

8  Investigation triggers the HIPAA Claims coverage in the AWAC Policy.  The DOJ

9  Investigation is also █████████████  trigger the Company Claims coverage in

10  the AWAC Policy.  In either circumstance, ML is entitled to the full limit of the

11  Policy.  Moreover, there is no exclusion in the Policy for which AWAC can meet

12  its burden to show that coverage is excluded.  AWAC, therefore, owes full

13  coverage under the Policy, and AWAC owes ML a duty to reimburse defense fees

14  "at ML's request" and "prior to the final disposition of [the Investigation]."  ML's

15  motion for summary judgment must be granted.[14]

16

17  Dated:  May 23, 2014                    ABELSON HERRON HALPERN LLP

18                                                        Marc D. Halpern
                                                          Vincent H. Herron

19                                                        Lisa Von Eschen

20                                           By <u>/s/ Vincent H. Herron</u>

21                                                        Vincent H. Herron

22                                           Attorneys for Plaintiff
                                             MILLENNIUM LABORATORIES, INC.

23

24

25

26  ─────────────────────
[14] ML has already incurred defense costs ████████████████████████

27  ████████████  but AWAC has agreed that it is not contesting the amount or

28  reasonableness of the costs.  Halpern Aff., Ex S.  Thus, this summary judgment
    will actually resolve liability *and damages*.  Only bad faith will be left for trial.



ML'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT