FRANK GOOCH III (Bar No. 70996)
YEN N. HOPE (Bar No. 233880)
E-Mail: fgooch@gilchristrutter.com
GILCHRIST & RUTTER
Professional Corporation
Wilshire Palisades Building
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401-1000
Telephone: (310) 393-4000
Facsimile: (310) 394-4700

RONALD P. SCHILLER (Admitted *Pro Hac Vice*)
PHILLIP E. WILSON, JR. (Admitted *Pro Hac Vice*)
ROBERT A. WIYGUL (Admitted *Pro Hac Vice*)
E-Mail: rps@hangley.com
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
Telephone:  (215) 568-6200
Facsimile:  (215) 568-0300

Attorneys for Defendant Allied World
Assurance Company (U.S.) Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA (SAN DIEGO)

| | |
|---|---|
| MILLENNIUM LABORATORIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALLIED WORLD ASSURANCE COMPANY (U.S.) INC. <br><br> Defendant. | Case No. 3:12-CV-02280-BAS-KSC <br><br> **[REDACTED]** <br><br> **DEFENDANT ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date:  June 23, 2014 <br><br> **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** <br><br> Action Filed: September 18, 2012 |

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................1

II.     STATEMENT OF FACTS...............................................................1

        A.      Millennium and the Urine Drug Testing Industry ..................1

        B.      Prior to the Inception of the Forcefield Po███████ Claims
                ███████████ m Alleging ███████████
                ███████████ ................ ...................2

        C.      The DOJ's Investigation of Millennium ...................................3

        D.      The Forcefield D & O Policy ...................................................5

III.    PROCEDURAL HISTORY ................................................................6

        A.      Resolution of the Coverage Action Turns on the Actual (Not
                Merely the Potential) Scope and Nature of the DOJ Investigation ........8

        B.      Subsequent Discovery Confirms the Close Relationship Between
                the DOJ Investigation and the Prior Actions ...........................9

        C.      ████████████████████████████████████ ......10

IV.     ARGUMENT ...................................................................................13

        A.      Applicable Legal Standards ...................................................13

                1.      Motions for Summary Judgment ................................13

                2.      Construction of Insurance Policies Under California Law ........14

        B.      The Allied World Policy Does Not Cover the DOJ Investigation .......15

                1.      The DOJ Investigation Does Not Come Within the Scope
                        of Basic Coverage................................................15

                2.      Coverage Is Barred by the Prior or Pending Litigation
                        Exclusion .........................................................18

                3.      Coverage Is Barred by the Specific Claims Exclusion..............20

                4.      Coverage Is Barred by the Prior Noticed Claims Exclusion......21

        C.      In the Alternative, Any Coverage Obligation Owed by Allied
                World Has Already Been Satisfied.........................................22

        D.      Millennium's Bad Faith Claim Fails as a Matter of Law ....................24

V.      CONCLUSION ...............................................................................25

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*
   855 P.2d 1263 (Cal. 1993)......................................................................17, 19, 24

*Beda ex rel. Kanteiko v. Hartford Cas. Ins. Co.*
   No. 11-1389, 2013 WL 755183 (S.D. Cal. Feb. 27, 2013) ..........................14

*Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co.*
   No. 12-10475, 2012 WL 6771835 (D. Mass. Dec. 26, 2012)........................21

*Coregis Ins. Co. v. Camico Mut. Ins. Co.*
   959 F. Supp. 1213 (C.D. Cal. 1997)..............................................................14

*Federal Insurance Co. v. Raytheon Co.*
   426 F.3d 491 (1st Cir. 2005) ....................................................................18, 19

*GBTI, Inc. v. Ins. Co. of Pa.*
   No. 09-1173, 2009 WL 2365409 (E.D. Cal. July 29, 2009).........................25

*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*
   56 Cal. Rptr. 3d 279 (Cal. Ct. App. 2007) ...................................................14

*Guebara v. Allstate Ins. Co.*
   237 F.3d 987 (9th Cir. 2001)....................................................................24, 25

*Hilb Rogal & Hobbs Ins. Servs. of Cal., Inc. v. Indian Harbor Ins. Co.*
   379 F. App'x 609 (9th Cir. 2010)............................................................17, 21

*Informix Corp. v. Lloyd's of London*
   No. C-91-1506, 1992 WL 469802 (N.D. Cal. Oct. 15, 1992) ......................18

*McWethy v. Cal. Ins. Guar. Ass'n*
   No. G035992, 2006 WL 1793640 (Cal. Ct. App. June 30, 2006) .................17

*Mock v. Michigan Millers Mutual Ins. Co.*
   5 Cal. Rptr. 2d 594 (Cal. Ct. App. 1992) .....................................................25

*Petersen v. Columbia Cas. Co.*
   No. 12-183, 2012 WL 5316352 (C.D. Cal. Aug. 21, 2012)..........................14

*Prop. I.D. Corp. v. Greenwich Ins. Co.*
   377 F. App'x 648 (9th Cir. 2010)..................................................................19

*Regal-Pinnacle Integrations Indus., Inc. v. Phila. Indem. Ins. Co.*
   No. 12-5465, 2013 WL 1737236 (D.N.J. Apr. 22, 2013)..............................19

*Stanford Ranch, Inc. v. Maryland Cas. Co.*
   89 F.3d 618 (9th Cir. 1996)...........................................................................14

*Titan Corp. v. Aetna Cas. & Sur. Co.*
   27 Cal. Rptr. 2d 476 (Cal. Ct. App. 1994) ...................................................15

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*
    666 F. Supp. 2d 1332 (S.D. Fla. 2009)..........................................................17

*Waller v. Truck Ins. Exch.*
    900 P.2d 619 (Cal. 1995)..................................................................................14

*Wayne Merritt Motor Co. v. N.H. Ins. Co.*
    No. 11-1762, 2012 WL 3071431 (N.D. Cal. July 26, 2012)...........................25

*WFS Fin., Inc. v. Progressive Cas. Ins. Co.*
    232 F. App'x 624 (9th Cir. 2007) (unpublished) ...........................................17

*XL Specialty Ins. Co. v. Perry*
    No. 11-2078 WL 3095331 (C.D. Cal. June 27, 2012) ......................17, 18, 21

*Zodiac Grp., Inc. v. Axis Surplus Ins. Co.*
    542 F. App'x 844 (11th Cir. 2013)..................................................................18

**RULES**

Fed. R. Civ. P. 56(a) ..............................................................................................13

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    <u>INTRODUCTION</u>

This case arises from an insurance coverage dispute in which plaintiff Millennium Laboratories, Inc. ("Millennium") seeks to recover millions of dollars it has allegedly spent responding to an investigation by the Department of Justice (the "DOJ Investigation") under a Forcefield Healthcare Organizations Directors and Officers Liability Policy (the "Allied World Policy" or simply the "Policy") issued by defendant Allied World Assurance Company (U.S.) Inc. ("Allied World") for the policy period December 1, 2011, to December 1, 2012.  Millennium contends here that it is entitled to payment of all defense costs related to the DOJ Investigation, up to the Policy's full $5,000,000 limit of liability.

All evidence in the case indicates that the DOJ Investigation concerns

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████

████████████████████████████  Accordingly, the costs incurred responding to the DOJ Investigation fail to satisfy conditions precedent to coverage – plus are subject to additional exclusions from coverage – that apply to the entire claim.  Even assuming, *arguendo*, that these provisions do not apply, Allied World still has no obligation to pay because it already has paid the full amount of the applicable sublimit.

## II.    <u>STATEMENT OF FACTS</u>

### A.    <u>Millennium and the Urine Drug Testing Industry</u>

Millennium operates in the highly regulated health care industry as a clinical laboratory providing urine drug testing at the request of health care providers, including physicians.[1]  The success of Millennium's business model depends on

---

[1] *See* Millennium Laboratories Services, http://millenniumlabs.com/services.

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  health care providers choosing Millennium over other competing labs for testing and

2  confirmatory testing of samples -- the more tests health care providers refer to

3  Millennium, the more revenue Millennium generates.  Many of the tests it performs

4  are billed to Medicare or Medicaid or other publicly funded health care programs.[2]

5  The urine drug testing industry in which Millennium operates is fiercely competitive

6  and its participants are highly litigious.[3]

7    **B.    Prior to the Inception of the Forcefield Policy, Numerous Claims**

8         **Were Filed Against Millennium Alleging** ███████████████

9         ███████████████

10       In the years and months prior to the inception of the Policy on December 1,

11  2011, Millennium had been named a party in ████████████████████

12  (the "Prior Actions").[4]  These and other Prior Actions share common legal and

13  factual bases involving allegations that Millennium, ████████████████

14  _____

15  (Wiygul Decl., Ex. 1).

16  [2] *See* Millennium Laboratories, Compliance & Ethics,
    http://millenniumlabs.com/compliance-ethics. (Wiygul Decl., Ex. 2).

17  [3] *See* Duff Wilson, *Exclusive: U.S. drug testing firm probed for alleged fraud,*

18  *intimidation*, Reuters, Nov. 16, 2012, *available at*
    http://www.reuters.com/article/2012/11/16/us-millenium-investigation-
    idUSBRE8AF0XQ20121116 (Wiygul Decl., Ex. 3).

19  [4] *See, e.g.,*



1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████.[5]  These Prior Actions are relevant here because the Policy has

8 three exclusions that are triggered by the relationships between what Millennium

9 seeks coverage for here – the DOJ Investigation – and those Prior Actions.

## C.   The DOJ's Investigation of Millennium

Allied World understands that Millennium first learned of the DOJ

Investigation when the DOJ served Millennium with a document subpoena on or

about March 27, 2012.  (*See* Wiygul Decl., Ex. 5.)  Thus, the first of the DOJ

Subpoenas was served against the backdrop of the allegations in the Prior Actions.

Millennium received two additional DOJ document subpoenas in August 2012 and

February 2013.  (*Id.*, Exs. 6, 7.) ████████████████████████████████

████████████████████████████████████████████████

████.[6]

---

[5] *See* Wiygul Decl., Ex. 4 ████████████████████████████████████

[6] Millennium responded to the DOJ Subpoenas by ████████████████████



LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1

2

3 allegations that

4 directly track those in the Prior Actions.



14 (Wiygul Decl., Ex. 12 ¶ 1 (emphasis added).)[7]

15      Although the DOJ has not publicized its Investigation of Millennium

16 (consistent with the requirements placed on the government by the Federal Rules of

17 Criminal Procedure), the press caught wind of the Investigation

18                          An article published in Reuters in November 2012 reported that

19 witnesses called before the grand jury convened by the DOJ testified that

20 "Millennium was getting doctors to order unnecessary urine tests and charging

21

22 _____

23

24

25

26 [7] Millennium and the DO

27

28 Decl., Ex. 12 ¶ 1.)

1  excessive fees to Medicare and private insurers."[8]  These witnesses further testified,

2  "in response to questions about a federal anti-kickback law," that Millennium was

3  giving "doctors free boxes of collection cups . . . to encourage referrals."[9]

4

5  .[10]

6  **D.  The Forcefield D & O Policy**

7  The Allied World Policy provides coverage on a claims-made basis, *i.e.*,

8  coverage "is generally limited to liability for only those claims that are first made

9  against [Millennium] during the policy period and reported in writing to the insurer

10  pursuant to the terms [there]in."[11]

11  The Policy expressly provides that Allied World "does *not* assume any duty

12  to defend any **Claim** under this Policy."[12]  (Wiygul Decl., Ex. 17 (Policy § VI.A)

13  (emphasis added).)[13]  As discussed below, subject to the terms and conditions of the

14  Policy, Allied World agreed to indemnify Millennium against **Defense Costs**



15  ─────────────

16  [8] Wiygul Decl., Ex. 3.  As explained below, *see supra* Section III.B.

17

18

19  [9] *Id.*

20  [10] *See* Wiygul Decl., Ex. 3 at 17

21

22

23

24  [11] Wiygul Decl., Ex. 17 (Policy Declarations, "Notices").

25  [12] Bolded terms are defined by the Policy.

26  [13] The Policy further provides that "[n]otwithstanding the foregoing, the **Insureds**
27  shall have the right to tender the defense of a **Claim** to the **Insurer**."  (Policy
   § VI.F.(1).)  Millennium did not exercise that right with respect to the DOJ
   Investigation, but rather retained its own defense counsel and seeks to recover its

28  **Defense Expenses**.  *See infra* note 15.

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

incurred in response to a *covered* **Claim**.  Importantly, "**Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in . . . the Declarations, and payment by [Allied World] of **Defense Costs** shall reduce and may exhaust such Limits of Liability."  (*Id.* § IV.C.)

The Policy contains an insuring agreement specifically addressed to Regulatory Claims Coverage.  (Policy § I.E.)  Pursuant to that insuring agreement, Allied World agreed to pay "the **Loss** [defined to include defense expenses] arising from a **Claim**, *first made during the Policy Period* . . . against [Millennium] for a *Regulatory* **Wrongful Act**."  (*Id.* (emphasis added).)[14]  Importantly, **Claims** for **Regulatory Wrongful Acts** are subject to a $100,000 sublimit of liability.  (*See id.* § I.E, Declarations Item 3.C.)

The Policy also contains conditions and exclusions that further define and limit the scope of coverage.  These include: the Related Claims Condition (*id.* § VII.D); the Prior or Pending Litigation Exclusion (*id.* § III.D); the Specific Claims Exclusion (*id.* Endorsement 7); and the Prior Reported Claims Exclusion (*id.* § III.E).  As demonstrated below, each of these conditions/exclusions operates to foreclose coverage for the DOJ Investigation.

## III.  PROCEDURAL HISTORY

Millennium retained outside counsel to defend itself against the DOJ Investigation and sought to obtain reimbursement of its defense costs from Allied

---

[14] As defined by the Policy, **Regulatory Wrongful Acts** comprise "any actual or alleged . . . act, error, omission, misstatement, misconduct, fraud reckless disregard or negligence committed by" Millennium "in the performance of, or failure to perform, any of the following activities in Medicaid, Medicare, Federal Employee Health Benefit or TriCare Programs: . . . (a) procedure coding; (b) bill, claim, cost report or data submissions; or (c) the calculation of managed care payments[.]" (Policy § II.BB.)  **Regulatory Wrongful Acts** also include any unlawful "offer, acceptance or payment by an **Insured** in exchange for any patient referral(s)," as well as any "offer, acceptance or payment by an **Insured** in violation of any . . . antikickback law."  (*Id.*)

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

World.[15]  In response, Allied World agreed to advance Millennium $100,000 in **Defense Costs** but expressly reserved all of its rights and defenses under the Policy.[16]  Indeed, Allied World's reservation-of-rights correspondence specifically noted the possible applicability of the Prior Litigation Exclusion (Policy § III.D), Prior Reported Claims Exclusion (*id.* § III.E), and Specific Claims Exclusion (Policy Endorsement No. 7).[17]

Dissatisfied with Allied World's response, Millennium filed this coverage action.  From the beginning of this litigation, Millennium has aggressively attempted to prevent Allied World from obtaining discovery regarding the scope and nature of the DOJ Investigation.  Millennium initially served broad objections to Allied World's discovery requests.  Indeed, Millennium objected to nearly every one of Allied World's document requests based on the astonishing assertion that the "facts and issues that are the subject of the DOJ Investigation" are irrelevant to Millennium's coverage claim.[18]  As explained by its counsel, Millennium's position was based on the premise that its claims against Allied World were subject to the

---

[15] Millennium never "tendered" the defense of the March 2012 Subpoena to Allied World.  "Tender" has a particularized meaning in the insurance context, and as the Policy makes clear, Millennium could have "tendered" the defense of the DOJ Investigation to Allied World only by providing "written notice . . . specifically requesting [Allied World] to assume the defense of such **Claim**," and such tender would have been effective only "upon [Allied World's] providing written confirmation thereof to [Millennium]."  (Policy § VI.F(2)-(3).)

[16] *See* Wiygul Decl., Ex. 18 at 221; *id.*, Ex. 20 at 239.

[17] Wiygul Decl., Ex. 20, at 234-37.

[18] *See* Plaintiff Millennium Laboratories, Inc.'s Objections and Responses to Defendant Allied World Assurance Company (U.S.) Inc.'s First Set of Requests for Production *passim* (Jan. 28, 2013) (Wiygul Decl., Ex. 21); Plaintiff Millennium Laboratories, Inc.'s Supplemental and Amended Objections and Responses to Defendant Allied World Assurance Company (U.S.) Inc.'s First Set of Requests for Production *passim* (May 17, 2013) (Wiygul Decl., Ex. 22).

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  "potential for coverage" standard applicable to policies in which the insurer assumes

2  a duty to defend the policyholder.

3      A.    **Resolution of the Coverage Action Turns on the Actual (Not**

4          **Merely the Potential) Scope and Nature of the DOJ Investigation**

5      On April 29, 2013, approximately one month after the court issued its initial

6  Scheduling Order in the Coverage Action, Millennium filed a motion for summary

7  judgment.  (Doc. 45.)  Millennium's motion was predicated on the same "potential

8  for coverage" standard as its broad objections to Allied World's discovery requests.

9  Millennium argued that it was entitled to an award of the full remaining limits of the

10  Policy based on the alleged fact that it was *possible* that the DOJ Investigation *might*

11  fall within the scope of one or more of the Policy's insuring agreements.

12      In its opposition to Millennium's motion, Allied World pointed out that the

13  "potential for coverage" standard did *not* apply to the Policy it issued to Millennium,

14  which did not impose a duty to defend.  (Doc. 56, at 11-20.)  Allied World further

15  showed that a determination of whether the Investigation is *actually* covered

16  requires full and adequate discovery into both the scope and nature of (*i.e.*, the

17  "facts and issues" in) the DOJ Investigation, as well as the scope and nature of the

18  Prior Actions.  (*Id.* at 20, 22-24.)  As Allied World pointed out in its opposition,

19  even the extremely limited discovery that Millennium had provided to that point

20  indicated that the DOJ Investigation concerns the same allegations of wrongdoing as

21  those set forth against Millennium in the Prior Actions – and thus that no coverage

22  is available.  (*Id.* at 3-6, 22, nn. 4-6, Exs. 3-7.)  Indeed, to illustrate the extremely

23  high degree of overlap between the DOJ Investigation and the Prior Actions, Allied

24  World provided the Court with a table comparing ██████████████████████

25  ████████████████████████████████████████████████

26  █████████████  (*See id.*, Ex. 3.)  Tellingly, in its reply brief, Millennium did not

27  even attempt to argue that the DOJ Investigation was *not* closely related to the Prior

28  Actions.  (Doc. 61)  It simply argued that, under a "potential for coverage" standard,

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1   Allied World was obligated, as a matter of law, to pay Millennium the full limits of

2   the Policy up front – and that any issues regarding the relationship between the

3   Investigation and Prior Action would not be ripe for adjudication unless and until

4   Allied World brought a subsequent action for recoupment.  (*Id.*)

5         Millennium's legal gambit failed.  On July 22, 2013, the Court denied

6   Millennium's motion for summary judgment.  (*See* Request for Judicial Notice

7   ("RJN"), Ex. 1.)  Finding that the "potential for coverage" standard did not apply to

8   the Policy issued by Allied World, the Court held Millennium must show that the

9   DOJ Investigation is *actually* covered by the Policy, which requires a full

10   consideration of, among other things, (1) the scope and nature of the DOJ

11   Investigation and (2) the relationship between the DOJ Investigation and the Prior

12   Actions.  (*Id.* at 10-15.)  With respect to the question of actual coverage, the Court

13   specifically took note of the evidence Allied World had proffered in support of its

14   contention that full discovery would establish that the DOJ Investigation is closely

15   related to the Prior Actions – and thus that no coverage is available.  (*Id.* at 14.)

16   **B.**    **<u>Subsequent Discovery Confirms the Close Relationship Between</u>**

17   **<u>the DOJ Investigation and the Prior Actions</u>**

18         What Allied World has learned since the Court denied Millennium's

19   premature motion for summary judgment only further confirms the extremely close

20   relationship between the DOJ Investigation and the Prior Actions.  A primary focus

21   of that discovery has been ████████████████████████████████████████████

22   ████████████████████  (*See, e.g.*, Wiygul Decl., Exs. 14-16, 41-43.)  For the

23   convenience of the Court, Allied World has assembled a chart illustrating the

24   overlap between ████████████████████████████████████████████████

25   ████████████████████████████████  and the allegations in the Prior

26   Actions.  (*See id.*, Ex. 4.)  This chart illustrates in stark and unmistakable terms the

27   extensive overlap between the conduct targeted by the Investigation and the conduct

28   alleged in the Prior Actions.  (*See id.*)  Allied World's discovery into ████

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  ████████████████████████████  has also confirmed the close

2  relationship between the Investigation and the Prior Actions.  Indeed, ██

3  ██████████████████████████████████████████

4  ████████████████████████████  (*See id.*, Exs. 23, 24.)

5  **C.**  ██████████████████████████████████████

6  ██████████████████████████

7  ████████████████████████████████

8  ████████████████████████████

9  ██████████████████████████████████

10  ██████████████████████████████████

11  ██████████████████████████████████

12  ████████████████████████████████

13  ██████████████████████████████████

14  ██████████████████████████████████

15  ██████████████████████████████████

16  ████████████████████████████████

17  ██████████████████████████████

18  ████████████████

19  ██████████████████████████████

20  ████████████████████████████████

[19] Millennium initially filed a motion asking the *Ameritox* court to allow it to file its motion to stay under seal.  (*See* RJN, Ex. 8.)  The *Ameritox* court heard argument on that motion (*see* Wiygul Decl., Ex. 26) and then ordered Millennium to serve the proposed motion to stay on Ameritox and submit it to the district judge's chambers. (*See* RJN, Ex. 9.) ████████████████████████████████████████ Because the Court denied in large part Millennium's motion to seal the motion to stay (*see* RJN, Ex. 10), Millennium ultimately did not file the motion to stay. ████████████████████████████

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700



LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

[20] *See also* RJN, Ex. 11 (Third Amended Complaint in Ameritox action ("TAC")). Ameritox's allegations in the TAC are virtually identical to those earlier made by Aegis in the Aegis action.  (*Compare* RJN, Ex. 11, *with* RJN, Ex. 7.)



(Wiygul Decl., Ex. 28.)



it is no wonder that Millennium fought so tenaciously to prevent Allied World from obtaining this discovery (and continues to resist Allied World's discovery efforts even now).

the DOJ Investigation and the Prior Actions involve                              .  As shown below, this                              is fatal to Millennium's coverage claims.

## IV.   ARGUMENT

### A.   Applicable Legal Standards

#### 1.   Motions for Summary Judgment

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the "initial burden of showing no genuine issue of material fact," which it can meet either by "negating an essential element of the

[21]



LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  non-moving party's case, or by showing that the nonmoving party failed to make a

2  showing sufficient to establish an element essential to that party's case, and on

3  which the party will bear burden of proof at trial." *Beda ex rel. Kanteiko v.*

4  *Hartford Cas. Ins. Co.*, No. 11-1389, 2013 WL 755183, at *3 (S.D. Cal. Feb. 27,

5  2013). "The burden then shifts to the non-moving party to show that there is a

6  genuine issue for trial." *Id.*

7           **2.**    **Construction of Insurance Policies Under California Law**

8         It is undisputed that the substantive law of California applies to the issues in

9  this coverage action.  As discussed above, as a result of this Court's earlier ruling on

10  Millennium's motion for summary judgment, it is the law of the case that the

11  "potential for coverage" standard is inapplicable.  (*See* RJN, Ex. 1, at 12-14.

12  Instead, Millennium cannot prevail unless it can show that DOJ Investigation is

13  *actually* covered by the Allied World Policy.  *See id.* at 5-10; *see also Petersen v.*

14  *Columbia Cas. Co.*, No. 12-183, 2012 WL 5316352, at *8 (C.D. Cal. Aug. 21, 2012)

15  (holding that "the action should be evaluated as a normal coverage dispute, more

16  similar to a duty to indemnify").

17         "Under California law, the interpretation of an insurance policy is a question

18  of law." *Id.* at *2 (citing *Waller v. Truck Ins. Exch.*, 900 P.2d 619, 627 (Cal. 1995)).

19  "The burden to show coverage is on the insured." *Id.* (citing *Waller*, 900 P.2d at

20  625-26).  "If coverage exists, then th[e] court must look to the contract exclusions to

21  see if coverage is otherwise excluded." *Stanford Ranch, Inc. v. Maryland Cas. Co.*,

22  89 F.3d 618, 627 (9th Cir. 1996).  Although the insurer has the burden of proving

23  exclusions to coverage, *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 56 Cal. Rptr. 3d

24  279, 284 (Cal. Ct. App. 2007), "[i]t is well-established California law that an insurer

25  may select the risks it will insure and those it will not and a clear exclusion will be

26  respected." *Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F. Supp. 1213, 1219

27  (C.D. Cal. 1997) (internal quotation marks omitted); *see also id.* ("When a policy

28  clearly excludes coverage, the court 'will not indulge in tortured constructions to

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  divine some theoretical ambiguity in order to find coverage.'" (quoting *Titan Corp.*

2  *v. Aetna Cas. & Sur. Co.*, 27 Cal. Rptr. 2d 476, 482 (Cal. Ct. App. 1994)).

3  **B.**    **The Allied World Policy Does Not Cover the DOJ Investigation**

4  **1.**    **The DOJ Investigation Does Not Come Within the Scope of**

5  **Basic Coverage**

6  As an initial matter, there is no coverage for the DOJ Investigation because it

7  does not come within the scope of any of the Policy's insuring agreements.

8  **(a)**    **The DOJ Investigation Is Not a "Claim"**

9  Judgment should be entered in favor of Allied World because the DOJ

10  Investigation is not the type of investigation that satisfies the definition of

11  **Claim.  Claim** is defined in Policy § II.D., as modified by Endorsement 9, to

12  include only certain types of investigations:  a "formal civil or criminal investigation

13  of an **Insured Person** [the definition does not include the entity, Millennium],

14  which is commenced by the filing or issuance of a notice of charges, *subpoena*,

15  Wells Notice, formal investigative order or similar document *identifying such*

16  ***Insured as a person against whom a proceeding identified in paragraphs (2) or (3)***

17  ***above may be commenced***" (emphases added) and a "formal administrative or

18  regulatory investigation of an **Insured**, which is commenced by the filing or

19  issuance of a . . . subpoena . . . identifying an **Insured** as a person or entity against

20  whom a proceeding identified in paragraphs (2) or (3) above may be commenced."

21  (Policy § II.D, Endorsement 9.)[22]

22  █████████████████████████████████

23  █████████████████████████████████████

24  ████████████████████████████████████

25  ██████████████████████ █████████████████

26  ―――――――――――――――――――

27  [22] The proceedings identified in paragraphs (2) and (3) are judicial, administrative, regulatory, arbitration, or mediation proceedings.  (Policy § II.D.)

28  [23] *See* Wiygul Decl., Exs. 5, 6, 12.



1

2

3    ██  As is made clear from the definitions, a "subpoena" in and of itself is not a

4  **Claim**.  An investigation commenced by the issuance of a subpoena *may* be a claim,

5  but only if the subpoena and the investigation have the characteristics required by

6  the **Claim** definitions.  ███████████████

7  ████████████████████████████

8  ████████████████████████

9  ███████████████████

10  █████████████████████████

11  █████████████████████

12  █████████████████████

13  ██████████████████████

14  ████████████████

15  █  Accordingly, the DOJ Investigation does not satisfy the definition █

16  ██████  and is therefore not a **Claim** covered under the Policy.

**(b)    <u>The DOJ Investigation is Not a "Claim First Made</u>**

**<u>During the Policy Period"</u>**

19    The Regulatory Claims insuring agreement extends coverage only to

20  "**Claim[s]** first made during the **Policy Period**," which is defined to run from

21  December 1, 2011, to December 1, 2012.  (*See* Policy § I.E., II.Y, Declarations Item

22  2.)[25]  The Policy provides that "[a]ll **Related Claims** shall be deemed to be a single

23  **Claim** made [no later than] on the date on which the earliest **Claim** within such

24  **Related Claims** was first made"  (*id.* § VII.D), and **Related Claims** are defined

---

[24] To trigger coverage, any such document would have to have been "fil[ed] or issu[ed]" before December 1, 2012, because the Policy covers only **Claims** "first made during the **Policy Period**."  (*See* Policy §§ I.C, I.E, I.F.)

[25] This same condition precedent is an integral part of other insuring agreements that Millennium may argue apply.  (*See* Policy §§ I.C, I.F.)

DEF. ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S MEMO OF P'S AND A'S ISO MSJ

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

broadly as "all **Claims** for **Wrongful Acts** based upon, arising out of, directly or indirectly resulting from, or in consequence of, the same *or related* facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events" (*id.* § II.CC (emphasis added)).  Under controlling California law, the term "related" in an insurance policy "is a broad word" that "encompass[es] both logical and causal relationships." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1271, 1274 (Cal. 1993); *accord WFS Fin., Inc. v. Progressive Cas. Ins. Co.*, 232 F. App'x 624, 625 (9th Cir. 2007) (unpublished); *McWethy v. Cal. Ins. Guar. Ass'n*, No. G035992, 2006 WL 1793640, at *5-7 (Cal. Ct. App. June 30, 2006).  The connective language used – "based upon, arising out of, directly or indirectly resulting from, or in consequence of" – is also unambiguously intended to give the **Related Claims** provision a broad scope.  *See, e.g.*, *XL Specialty Ins. Co. v. Perry*, No. 11-2078, 2012 WL 3095331, at *5-6 (C.D. Cal. June 27, 2012) (construing nearly identical language in an "interrelated wrongful acts" provision and holding that "the definition of 'interrelated wrongful acts'" is "unambiguous" and "describes a broad range of relationships between the original claim and other lawsuits that will be deemed as part of that same claim and made at the time of the first claim").[26]

Here, as demonstrated above, there can be no question that the DOJ Investigation and the Prior Actions are "based upon, aris[e] out of, directly or indirectly resulting from, or in consequence of, the same *or related* facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events" – and thus are **Related**

---

[26] *Accord Hilb Rogal & Hobbs Ins. Servs. of Cal., Inc. v. Indian Harbor Ins. Co.*, 379 F. App'x 609, 610-11 (9th Cir. 2010) (construing similar connective language in an exclusion); *Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*, 666 F. Supp. 2d 1332, 1340 (S.D. Fla. 2009) (explaining that this sort of connective language "is extremely broad, but it is also equally clear and without ambiguity"), *aff'd*, 374 F. App'x 906 (11th Cir. 2010).

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

**Claims**. ████████████████████ Indeed, ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ Accordingly, to the extent the DOJ Investigation

is a **Claim**, it is deemed to have been made at the time the earliest Prior Action was

filed – that is, *before* the inception of the Policy.[27]  Because "a condition precedent

to coverage under the Policy [is] that the claims [in question] have been '*first made* .

. . during the Policy Period,'" Millennium cannot, as a matter of law, carry its burden

of showing that the DOJ Investigation comes within the Allied World Policy's scope

of basic coverage.  *See Zodiac Grp., Inc. v. Axis Surplus Ins. Co.*, 542 F. App'x 844,

849-50 (11th Cir. 2013); *accord XL Specialty*, 2012 WL 3095331, at *5-6; *Informix

Corp. v. Lloyd's of London*, No. C-91-1506, 1992 WL 469802, at *3 (N.D. Cal. Oct.

15, 1992).

> ## 2. Coverage Is Barred by the Prior or Pending Litigation Exclusion

For similar reasons, coverage for the DOJ Investigation is also

unambiguously barred by the Prior or Pending Litigation Exclusion, which provides:

> This Policy shall not cover any **Loss** [defined to include **Defense Costs**] in connection with any **Claim**] . . . alleging, arising out of, based upon or attributable to, as of [December 1, 2011], any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, of which an **Insured** had notice, *including* any **Claim** alleging or derived from the same or essentially the same facts, or the same *or related* **Wrongful Acts**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

(Policy § III.D (emphasis added).)  One of the leading cases on such exclusions is

*Federal Insurance Co. v. Raytheon Co.*, 426 F.3d 491 (1st Cir. 2005).  As the First

Circuit explained in *Raytheon*, prior litigation exclusions "combat the problem of

adverse selection or 'insuring the building already on fire'; that is, an insured who

---

[27] All of the Prior Actions were filed before the Allied World Policy incepted.  *See supra* note 4.

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000  •  FAX (310) 394-4700

has previously been sued faces a greater risk of related litigation and has a corresponding incentive to seek insurance." *Id.* at 499.  Recognizing that "[t]he insurance company's legitimate interest in combating the adverse selection problem is properly implicated when there is a real and substantial overlap with the complaint in the prior lawsuit," and interpreting a prior litigation exclusion that was arguably worded more narrowly than the exclusion at issue here,[28] the First Circuit held that the exclusion applies where "there is ***substantial overlap*** in the second [proceeding] with the facts underlying or alleged in the [earlier] complaint." *Id.* at 499-500 (emphasis added); *accord Regal-Pinnacle Integrations Indus., Inc. v. Phila. Indem. Ins. Co.*, No. 12-5465, 2013 WL 1737236, at *6-8 (D.N.J. Apr. 22, 2013). Importantly, "complete identity between the two [proceedings] is plainly not required," and "differences in theories of recovery or the identity of parties in the proceedings do not in and of themselves preclude exclusion." *Raytheon*, 426 F.3d at 497-98.  Indeed, the *Raytheon* court held that the exclusion clearly applied to the case before it notwithstanding that the action at issue alleged certain facts that were not alleged in the earlier proceeding, and notwithstanding that "[s]ome of these non-overlapping facts are critical to the [action at issue]." *Id.* at 500.  As the First Circuit put it, "acknowledging that there are substantial areas of non-overlap does not defeat the fact here that there is substantial overlap between [the allegations in the two proceedings]." *Id.*; *accord Prop. I.D. Corp. v. Greenwich Ins. Co.*, 377 F. App'x 648, 649 (9th Cir. 2010) (non-precedential) (holding that despite the fact that the

---

[28] The policy in *Raytheon* excluded coverage for "any Claim made against any Insured . . . based upon, arising from or in consequence of any demand, suit or other proceeding pending . . . on or prior to [September 15, 2000], or the same or any *substantially similar* fact, circumstance or situation underlying or alleged therein." *Id.* at 497 (emphasis added).  The exclusion in the Allied World Policy, by contrast, applies to "any **Claim** alleging or derived from" not only "the same or essentially the same facts," but also from "the same *or related* **Wrongful Acts**" as alleged in prior or pending litigation.  (Policy § III.D.)  As discussed in the previous section, the term "related" "is a broad word" that "encompass[es] both logical and causal relationships" and is used "to achieve a broad purpose." *Bay Cities*, 855 P.2d at 1271, 1274.

later proceeding "contain[ed] some allegations that are not found in" the earlier one, the prior litigation exclusion applied because both proceedings arose out of the same basic dispute).

Given the close relationship between the DOJ Investigation and the Prior Actions, the Prior Litigation Exclusion squarely forecloses coverage.  It is undisputed that Millennium had "notice" of each of the Prior Actions before the Policy incepted on December 1, 2011.  (*See* Policy § III.D.)  Furthermore, the DOJ Investigation plainly exhibits "substantial overlap" with the Prior Actions.  ██████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████  Accordingly – and notwithstanding Millennium's inevitable attempt to identify isolated areas of the Investigation that may not completely overlap – the exclusion clearly applies and bars any coverage for the DOJ Investigation.

### 3.  Coverage Is Barred by the Specific Claims Exclusion

In the same vein, coverage is barred by the Specific Claims Exclusion, which states that "[n]o coverage will be available for **Loss** from any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving," *inter alia*, the Ameritox Action, the Aegis Action, and the Cunningham Action.  (Policy Endorsement No. 7.)[30]  The connective language in this exclusion



[29] *See* ████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

[30] The file numbers in the Specific Claims Exclusion are taken from ████████████████
████████████████████████████████████████████████████████████  The
file numbers refer to files maintained by the prior insurer's outside counsel,
Kaufman Borgeest & Ryan LLP ("KBR").  ████████████████████████████████

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

is, once again, extremely broad.  *See Hilb Rogal*, 379 F. App'x at 610-11; *XL Specialty*, 2012 WL 3095531, at *6; *Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co.*, No. 12-10475, 2012 WL 6771835, at *5-7 (D. Mass. Dec. 26, 2012), *aff'd*, 734 F.3d 51 (1st Cir. 2013).  The purpose of this language is pellucidly clear: to bar coverage for any claim that is "broadly related" to any of the claims in the identified Prior Actions.  *See XL Specialty*, 2012 WL 3095531, at *6-7.  As established above, to the extent that the DOJ Investigation constitutes a **Claim**, it is one that is clearly "based upon, arise[s] out of, directly or indirectly result[s] from, in consequence of, or in any way involve[s]" the ██████████████████████ actions.  ████████████████████████   The Specific Claims Exclusion thus independently requires the entry of judgment in Allied World's favor.

### 4.   Coverage Is Barred by the Prior Noticed Claims Exclusion

Finally, coverage is also foreclosed by the Prior Noticed Claims Exclusion, which bars coverage for

> any **Claim[]** . . . alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or to the same *or related* **Wrongful Acts** alleged or contained, in any **Claim** which has been reported, or in any circumstances of which notice has been given, before [December 1, 2011], under any policy, whether excess or underlying, of which this Policy is a renewal or replacement *or which it may succeed in time.*



LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1  (Policy § III.E (emphases added).)  This exclusion has a scope similar to that of the

2  Prior Litigation Exclusion, except that the Prior Noticed Claims Exclusion addresses

3  the relationship between the DOJ Investigation and **Claims** that were reported (or

4  circumstances that were noticed) before December 1, 2011, to other insurers under

5  policies in effect before the Allied World Policy, while the Prior Litigation

6  Exclusion addresses the relationship between the DOJ Investigation and claims of

7  which Millennium had notice before December 1, 2011.  Here, it is undisputed that

8  Millennium reported and tendered the defense of each of the Prior Actions to other

9  insurers under policies in effect prior to the Allied World Policy.[31]  And for the

10  reasons given above, *see supra* Section III.B.2, the DOJ Investigation is "based

11  upon . . . the same or essentially the same facts alleged, or . . . the same or related

12  **Wrongful Acts** alleged or contained" in the Prior Actions.  (*See* Wiygul Decl., Exs.

13  4, 25, 27, 28.)  Like the other two exclusions, then, the Prior Noticed Claims

14  Exclusion clearly and unambiguously bars coverage for the DOJ Investigation.

### C.  In the Alternative, Any Coverage Obligation Owed by Allied World Has Already Been Satisfied

17  In the alternative, judgment should be entered in favor of Allied World

18  because it already satisfied whatever obligation for coverage of the DOJ

19  Investigation it may have had when it paid the full $100,000 sublimit for

20  **Regulatory Claims Coverage**, subject to a reservation of rights.

21  The Policy provides **Regulatory Claims Coverage** "subject to the Sublimit

22  of Liability set forth in Item 3.c. of the Declarations [$100,000], the **Loss** arising

23  from a **Claim**, first made during the **Policy Period** (or Discovery Period, if

24  applicable) against the **Insureds** for a **Regulatory Wrongful Act** . . . ."  (Policy

25  § I.E; Declarations Item 3.C.)  **Regulatory Wrongful Acts** are, *inter alia*, any actual

26  or alleged: (1) error, misconduct, fraud, reckless disregard or negligence in

27

28  [31] *See, e.g.*, Wiygul Decl., Exs. 39, 40.

"procedure coding; bill, claim, cost report or data submission; or the calculation of managed care payments" with respect to "the Medicaid, Medicare, Federal Employee Health Benefit or TriCare Programs"; (2) "offer, acceptance or payment" in exchange for patient referrals in violation of state, local, or federal law; or (3) offer, acceptance of payment in violation of state, local, or federal anti-kickback laws.  (*Id.* § II.BB.)[32]



1 ████████████████████████████████████████████████

2 █████

3 ██████████████████████████████████

4 ██████████████████████████████████

5 ████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████   Accordingly, even if this Court finds coverage for

8 the DOJ Investigation (which it should not), such coverage is limited to the

9 $100,000 sublimit for **Regulatory Claims Coverage**.[34]  When Allied World paid

10 that amount to Millennium in 2012, it extinguished any contractual obligation it had

11 to Millennium for costs incurred in connection with the DOJ Investigation.

### D.   Millennium's Bad Faith Claim Fails as a Matter of Law

13 Allied World is likewise entitled to summary judgment on Millennium's

14 Third Cause of Action, "Breach of Covenant of Good Faith and Fair Dealing," in

15 which Millennium asserts that Allied World has breached the implied covenant of

16 good faith and fair dealing by refusing to provide coverage, by delaying payment,

17 and by conducting an inadequate investigation and failing "to apply the potential for

18 coverage standard." (RJN, Ex. 12 ¶¶ 44-47)  To establish its claim for bad faith

19 under California law, Millennium must show that Allied World's denial or delay in

20 providing benefits was not only wrong but unreasonable. *Guebara v. Allstate Ins.*

21 *Co.*, 237 F.3d 987, 992 (9th Cir. 2001).  As established above, because Allied

---

22 [33] ████████████████████████████████████████

23 ████████████████████████████████████████   ██

24 ██████████████████████████████████

25 [34] To the extent Millennium argues, as it has in the past, that the sublimit cannot
apply because the DOJ Investigation can fall under other insuring agreements, the

26 Court should reject that reading of the Policy.  For the **Regulatory Claims
Coverage** insuring agreement to have any meaning at all, it must be read to override

27 other insuring agreements where it applies.  *Bay Cities Paving & Grading, Inc. v.
Lawyers Mut. Ins. Co.*, 855 P.2d 1263, 1271 (Cal. 1993) (policy language must be

28 construed to give effect to each and every term).

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

1   World's coverage position is correct, there is no bad faith exposure.  Furthermore,

2   on the undisputed facts known to Allied World at the time Millennium filed suit,

3   there was at the very least a "genuine dispute" over coverage – *i.e.*, reasonable

4   minds could disagree over the existence of coverage.  *Id.*  In addition, there is no

5   evidence that its investigation was unreasonable or driven by an improper motive,

6   was inadequate or inordinately delayed.[35]  This Court already has ruled that

7   Millennium improperly sought to hold Allied World to a "potential for coverage"

8   standard and not an "actual coverage" standard.  (*See* RJN, Ex. 1.)  This coupled

9   with the fact that there is no evidence that Millennium provided any of the

10  voluminous information it had about the Investigation before suing Allied World

11  further undermines Millennium's arguments.  Finally, Millennium is not entitled to

12  punitive damages because Allied World's conduct was not unreasonable and there is

13  no evidence whatsoever – let alone clear and convincing evidence -- of oppression,

14  fraud, or malice.  *See Mock v. Michigan Millers Mutual Ins. Co.*, 5 Cal. Rptr. 2d

15  594, 610 (Cal. Ct. App. 1992); *GBTI, Inc. v. Ins. Co. of Pa.*, No. 09-1173, 2009 WL

16  2365409, at *7-8 (E.D. Cal. July 29, 2009).  For these reasons, judgment should be

17  entered in favor of Allied World.

18  **V.    CONCLUSION**

19      For the foregoing reasons, Allied World respectfully requests that the Court

20  grant summary judgment in its favor on all counts of Millennium's complaint.

21

22

23

24

---

25  [35] "[T]here must be proof the insurer failed or refused to discharge its contractual
26  duties not because of an honest mistake, bad judgment, or negligence, but rather by
    a conscious and deliberate act, which unfairly frustrates the agreed common
27  purposes and disappoints the reasonable expectations of the other party . . . ."
    *Wayne Merritt Motor Co. v. N.H. Ins. Co.*, No. 11-1762, 2012 WL 3071431, at *6
28  (N.D. Cal. July 26, 2012) (internal quotation marks omitted).

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000  •  FAX (310) 394-4700

1    DATED:  May 23, 2014                    HANGLEY ARONCHICK SEGAL
2                                            PUDLIN & SCHILLER
3
4                              By:           /s/ Ronald P. Schiller
                                             Ronald P. Schiller
5                                            E-Mail: rps@hangley.com
6                                            Phillip E. Wilson, Jr.
                                             Robert A. Wiygul
7                                            One Logan Square, 27th Floor
8                                            Philadelphia, Pennsylvania 19103
                                             Telephone:  (215) 568-6200
9
10                                           Frank Gooch III
                                             E-Mail: fgooch@gilchristrutter.com
11                                           Yen N. Hope
12                                           Wilshire Palisades Building
                                             1299 Ocean Avenue, Suite 900
13                                           Santa Monica, California  90401
                                             Telephone:  (310) 393-4000
14
15                                           Attorneys for Defendant Allied World
16                                           Assurance Company (U.S.) Inc.
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700

**CERTIFICATE OF SERVICE**

I, Ronald P. Schiller, hereby certify that on May 23, 2014, the foregoing **[REDACTED] DEFENDANT ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed electronically with the Clerk of the Court using the CM/ECF system, which sent a Notification of Electronic Filing to the persons at the email addresses listed immediately below.  The foregoing document is available for viewing and downloading from the CM/ECF system.  Accordingly, pursuant to the Court's Local Rule 5.4(c), I caused the documents to be sent electronically from the CM/ECF system to the persons listed immediately below.

Marc D. Halpern, Esq.
Vincent H. Herron, Esq.
Nadia A. Sarkis, Esq.
Lisa Von Eschen, Esq.
Abelson Herron Halpern LLP
600 West Broadway, Suite 1060
San Diego, California  92101
Telephone:  (619) 618-7000
Facsimile: (619) 618-7001
mhalpern@abelsonherron.com
vherron@abelsonherron.com
nsarkis@abelsonherron.com
lvoneschen@abelsonherron.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 23, 2014, at Philadelphia, Pennsylvania.

/s/ Ronald P. Schiller

LAW OFFICES
GILCHRIST & RUTTER
PROFESSIONAL CORPORATION
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CALIFORNIA 90401-1000
TEL (310) 393-4000 • FAX (310) 394-4700