1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12

MILLENNIUM LABORATORIES, INC.,

13

Case No. 12-cv-2280-BAS(KSC)

14

Plaintiff,

**ORDER:**

15

v.

**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND**

16
17

ALLIED WORLD INSURANCE COMPANY (U.S.), INC.,

**(2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

18
19

Defendant.

**[ECF Nos. 156, 161]**

20
21

This case arises from an insurance coverage dispute in which Plaintiff

22

Millennium Laboratories, Inc. ("Millennium") seeks reimbursement for the money it

23

has spent responding to an investigation by the United States Department of Justice

24

("DOJ").  Millennium seeks to recover under a Forcefield Healthcare Organizations

25

Directors and Officers Liability Policy No. 0307-1511 ("the Policy") issued by

26

Defendant Allied World Assurance Company (USA), Inc. ("Allied World") for the

27

policy period of December 1, 2011 to December 1, 2012.

28

//

Millennium contends that it is entitled to payment of all defense costs related to the DOJ Investigation up to the Policy's full $5,000,000 limits of liability.  Allied World, however, claims that Millennium is limited by the Sublimits of the "Regulatory Claims Coverage" in the Policy to $100,000 recovery, which it has already paid to Millennium.

Alternatively, Allied World argues that the "Related Claims" provision in the Policy militates against recovery and that several exclusions in the Policy, including the prior or pending litigation exclusion, the prior noticed claims exclusion and the specific claims exclusion, prohibit Millennium from recovering any defense costs at all.  Both sides have brought cross motions for summary judgment.

## I.    BACKGROUND

Millennium is a specialty diagnostics laboratory that provides services to the chronic pain market.  (Declaration of Martin A. Price ("Price Decl.") ¶ 6, ECF No. 156-2.)  Specifically, Millennium provides drug testing of chronic pain patients for doctors and other authorized health providers.  (*Id.*)  Millennium states that approximately seventy percent (70%) of its services are paid for by private insurance programs, with most of the remainder covered by government sponsored programs such as Medicare or Medicaid.  (Price Decl. ¶ 7.)

### A.    The Policy

Millennium obtained the Policy from Allied World for the period of December 1, 2011 to December 1, 2012.  (Price Decl. ¶ 8.)  Among other coverage, the Policy provides "Company Claims Coverage" for any "Loss [including legal costs or attorney fees] arising from a Claim . . . against [Millennium] for a Wrongful Act" defined as "any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement."  The Policy also provides "HIPAA Claims Coverage" covering Defense Expenses "arising from a Claim . . . against [Millennium] for an actual or

alleged act, error or omission of [Millennium] in violation of [HIPAA] and any rules or regulations promulgated thereunder."  The Aggregate Limit of Liability for both of these types of coverage is $5,000,000.  (Declaration of Robert A Wiygul ("Wiygul Decl.") Ex. 17, §§ I.C, I.F, Policy Declarations 3A, ECF No. 161-2.)

A specific endorsement expands the definition of a "Claim" to include a "formal civil or criminal investigation of an Insured Person, which is commenced by the filing or issuance of a . . . subpoena . . . identifying such Insured as a person against whom a proceeding . . . may be commenced." (Wiygul Decl. Ex. 17, Endorsement 9 ¶ 4.) The definition also adds a "formal administrative or regulatory investigation of an Insured, which is commenced by the filing or issuance of a . . . subpoena . . . identifying an Insured as a person or entity against whom a proceeding . . . may be commenced." (*Id.* ¶ 5.)

The Policy additionally provides "Regulatory Claims Coverage" for any "Loss [including legal costs or attorney fees] arising from a Claim . . . against [Millennium] for a Regulatory Wrongful Act." (Wiygul Decl. Ex. 17 § I.E.)  "Regulatory Wrongful Act" is defined as an:

> (1) act, error, omission, misstatement, misconduct, fraud, reckless disregard or negligence committed by an Insured in the performance or failure to perform any of the following activities in the Medicaid, Medicare, Federal Employee Health Benefit or Tricare Programs:
> (a) procedure coding;
> (b) bill claim, cost report or data submission; or
> (c) the calculation of managed care payments;
>
> (2) offer, acceptance or payment by any Insured in exchange for any patient referrals), in violation of any state, local or federal law; or
>
> (3) offer, acceptance of payment by an Insured in violation of any state, local or federal antikickback law.

(Wiygul Decl. Ex. 17 § II.BB.)  Coverage for "Regulatory Claims" is subject to a Sublimit on Liability of $100,000.  (Wiygul Decl. Ex. 17 § I.E, Policy Declarations 3C.)

//

The Policy states that "[a]ll Related Claims shall be deemed to be a single Claim made on the date on which the earliest Claim within such Related Claim was first made." (Wiygul Decl. Ex. 17 § VII.D.)  "Related claims" are defined as "all Claims for Wrongful Acts based upon, arising out of, directly or indirectly resulting from, or in consequence of, the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situation, transactions or events." (Wiygul Decl. Ex.17 § II.CC.)

Several exclusions in the Policy are also at issue.  The "Prior or Pending Litigation Exclusion" excludes coverage for any defense costs:

> alleging, arising out of, based upon or attributable to . . . any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an Insured had notice, including any Claim alleging or derived from the same or essentially the same facts, or the same or related Wrongful Acts, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation[.]

(Wiygul Decl. Ex. 17 § III.D.)  The "Prior Noticed Claims Exclusion" bars coverage for any claim "alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or to the same or related Wrongful Acts alleged or contained, in any Claim which has been reported . . . under any policy[.]"  (Wiygul Decl. Ex. 17 § III.E.)  And the "Specific Claims Exclusion" provides that "[n]o coverage will be available for Loss from any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving" the Ameritox Action, the Aegis Action and the Robert Cunningham Action.  (Wiygul Decl. Ex. 17, Endorsement 7.)

## B.    The DOJ Investigation

On or about March 27, 2012, August 2, 2012, February 28, 2013, March 5, 2013, April 17, 2013, and October 10, 2013, the DOJ served Millennium with "HIPAA subpoenas." (Price Decl. ¶¶ 9–14, Exs. B–G, ECF No. 165-2--7; Wiygul Decl. Exs. 5–7.)  Millennium states that shortly after receiving the initial subpoena, it provided

the subpoena to Allied World.  (Price Decl. ¶ 17.)  In these subpoenas, a wide variety of potential health care offenses are listed, along with far-reaching broad documentary requests.  (Wiygul Decl. Exs. 5–7; Price Decl. Exs. B–G, ECF No. 165-2–7.)

In several letters sent from the DOJ attorney to Millennium's attorney in 2012, the DOJ attorney explains:

> [T]his Office is presently conducting a joint criminal and civil investigation of your client, Millennium, and its officers, employees and agents.  That conduct includes, without limitation, allegations that Millennium and certain of its officers, employees and agents may have violated various federal criminal statutes including but not limited to . . . [conspiracy to defraud, submission of false, fictitious, fraudulent claims to the US, health care fraud offenses, mail fraud and/or wire fraud, anti-kickback acts and certain civil statutes including civil false claims acts and administrative statutes] . . . in connection with billing false or fraudulent claims to federal health care programs and/or other payors; payment of remuneration to physicians and/or others to induce referrals of laboratory tests to Millennium, and interference with witnesses and /or destruction of evidence.

(Wiygul Decl. Ex. 12, ECF No. 166-1.)

## C.   The Prior Litigation

Prior to December 1, 2011, Millennium had been named as a party in several *qui tam* and private lawsuits. These prior actions involved competitors alleging that Millennium had gained a competitive edge by engaging in unlawful business practices including encouraging health care providers to submit false and/or fraudulent claims to health insurers and by providing unlawful kickbacks.

For example, in *United States ex rel. Cunningham v. Millennium*, No. 09-12209 (D. Mass. Dec. 29, 2009) (the "Cunningham Action"), Cunningham alleged Millennium violated the Federal False Claims Act, 31 U.S.C. § 3729(a), and other state laws, by using a "Physician Billing" Model that "encourage[d] physicians to submit false claims to government and private health insurance programs." (Wiygul Decl. Ex. 2 ¶ 16.)  The complaint further alleges Millennium "misrepresent[ed] the number of urine samples it was testing."  (*Id.* ¶ 29.)

Similarly, in *United States ex rel. Schur v. Millennium*, No. 11-2198 (C.D. Cal. Mar. 15, 2011), Schur alleged Millennium and eight other drug testing labs, along with many healthcare providers, in violation of 31 U.S.C. § 3729(a), "knowingly present[ed] and/or caus[ed] to present to agents, contractors, or employees of the Government false and fraudulent billings for payment and approval." (Wiygul Decl. Ex. 3 ¶ 19.)

In *Ameritox v. Millennium*, No. 11-775 (M.D. Fla. Apr. 18, 2011), and *Ameritox v. Millennium*, No. 11-866 (S.D. Cal. Apr. 22, 2011) (the "Ameritox Action"), competitor Ameritox alleged that "Millennium formed a business plan to increase its market share . . . through an improper and illegal scheme" including illegal kick-backs and encouraging false billings to Medicare. (Def.'s Request for Judicial Notice ("RJN") Ex. 5 ¶¶ 10–11, ECF No. 161-3; Def's RJN Ex. 11, ECF No. 161-4.)

*Aegis Sciences Corp. v. Millennium*, No. 11-294 (M.D. Tenn. Mar. 29, 2011) (the "Aegis Action") is an "action for injunctive relief, disgorgement of ill-gotten gains and damages caused by Millennium's numerous ongoing and constantly evolving schemes to defraud the federal and state health care programs (such as Medicare and Medicaid) and private payors and insurers. Millennium's panoply of schemes include illegal kickbacks, fee sharing arrangements and fraudulent, unnecessary and duplicative testing and billing practices." (Def.'s RJN Ex. 7, Introduction, ECF No. 161-4.)

Finally, in *Millennium v. Calloway*, No. 10-3491 (Mass. Super. Ct.), Millennium competitor Calloway filed counter-claims on September 26, 2011 alleging that Millennium encourages a billing scheme "which results in charging excessive, unreasonable and unnecessary fees to third party payors, including but not limited to Medicare and Medicaid." (Def.'s RJN Ex. 6 ¶ 34, ECF No. 161-4.)

**D.     This Litigation**

Millennium states that on or around December 17, 2012, it received a payment of $100,000 from Allied World for the defense costs related to the DOJ subpoenas. (Price Decl. ¶ 34.) Allied World claims this was an advance for defense costs but that

it expressly reserved all its rights and defenses under the Policy. (ECF No. 172.) Millennium has incurred over $5,000,000 in legal fees defending the DOJ subpoenas. (Price Decl. ¶¶ 22–33.)

On September 18, 2012, Millennium filed a complaint against Allied World alleging causes of action for: (1) declaratory relief, (2) breach of contract, and (3) breach of the covenant of good faith and fair dealing. (ECF No. 1, Compl.) On July 22, 2013, this Court denied Millennium's first Motion for Summary Judgment. (ECF No. 73.) The Court concluded the "potential for coverage" standard did not apply to the Policy since the Policy did not involve a duty to defend but a duty to indemnify. (*Id.*) The Court also concluded that Allied World did not have a duty to defend Millennium and, therefore, at that early stage of the litigation, there was a genuine issue of material fact as to whether the underlying claim was within the scope of coverage.

Discovery has now been completed, and both parties have brought Motions for Summary Judgment, asking this Court to find whether the underlying claims were within the scope of coverage.

## II.    LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that

negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252).  Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *See Matsushita*, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

The mere fact that the parties filed cross-motions "does not necessarily mean there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). "[E]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Furthermore, the court must consider evidence submitted in support of and in opposition to both motions before ruling on either one. *Id.*

## III.  DISCUSSION

Both parties bring cross-motions for summary judgment.  Millennium moves for summary judgment that Allied World owes coverage up to the $5 million limits.  Allied World moves for cross-summary judgment, arguing that it indisputably owes no money to Millennium under the Policy.

Allied World alleges first that Millennium's claim does not fall within the Policy terms.  Allied World asserts that the DOJ subpoena does not constitute a "claim" against Millennium because it reflects a formal civil or criminal investigation not against an Insured Person, but instead against an entity (Millennium).  Furthermore, Allied World says the Policy only covers claims first made during the Policy period and all related claims are deemed to be a single claim.  Therefore, this claim arose before the policy period.  Next, Allied World argues exclusions for prior litigation, specific claims and prior noticed claims all apply.  Finally, Allied World argues any coverage obligation has already been satisfied by its payment of $100,000 under the Regulatory Claims coverage.

The parties agree California law applies.  *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,  499 F.3d 1048, 1052 (9th Cir. 2007) (forum state law applies to diversity actions).  Under California law, interpretation of an insurance policy is a question of

law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995); *see also New Hampshire Ins. Co. v. R.L. Chaides Constr. Co., Inc.*, 847 F. Supp. 1452, 1455 (N.D. Cal. 1994) (insurance contracts are particularly amenable to rulings on summary judgment).

The court must first look at the language of the contract to "ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18. The court should give effect to the "mutual intention" of the parties at the time the contract is formed. *Id.* "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* The "language in the contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. Courts will not strain to create an ambiguity where none exists." *Id.* at 18-19 (citation omitted).

"[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (internal quotation marks omitted). The court must analyze the coverage provisions first to determine whether a claim falls within the policy terms before analyzing any exclusions. *Waller*, 11 Cal. 4th at 16. The burden is on the insured to show the claim falls within the basic scope of coverage. *Id.*

Exclusions are construed narrowly and must be proven by the insurer. *Waller*, 11 Cal. 4th at 16. "An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *MacKinnon*, 31 Cal. 4th at 648. "[T]he burden rests on the insurer to phrase exceptions and exclusions in clear and unmistakable language." *Id.* (internal quotation marks omitted).

The "prior litigation" exclusion does not require complete identity between the prior and current lawsuits, and difference in theories of recovery or the identity of the parties in the proceedings do not, in and of themselves, preclude the exclusion. *Federal Ins. Co. v. Raytheon, Co.*, 426 F.3d 491, 497-98 (1st Cir. 2005). The appropriate inquiry is whether the second complaint substantially overlaps with the first

with respect to relevant facts. *Id.* at 498. "Prior and pending litigation exclusions . . . combat the problem of adverse selection or 'insuring the building already on fire,' that is, an insured who has previously been sued faces a greater risk of related litigation and has a corresponding incentive to seek insurance." *Id.* (citation omitted). "The insurance company's legitimate interest in combating the adverse selection problem is properly implicated when there is a real and substantial overlap with the complaint in the prior lawsuit, as opposed to an incidental or fortuitous relationship to the prior complaint." *Id.* at 499-500.

Thus, in *Financial Management Advisors, LLC v. American International Specialty Lines Insurance Co.*, 506 F.3d 922, 925-27 (9th Cir. 2007), the Ninth Circuit reversed the district court's determination that the "prior litigation" exclusion applied because the earlier lawsuit, although it involved similar misrepresentations made by the same financial advisor, involved misrepresentations made to unrelated investors, with unique investment objectives, advised at separate meetings on separate dates. More importantly, some of the wrongful acts alleged by the two clients were different. *Fin. Mgmt. Advisors*, 506 F.3d at 925-26. *But see Property I.D. Corp. v. Greenwich Ins. Co.*, 377 F. App'x 648, 649 (9th Cir. 2010) (prior litigation exclusion applies even if subsequent underlying action contained some allegations that were not found in prior claims).

This court looks first at whether Millennium's claim falls within the Policy terms. The Policy provides coverage for any "[l]oss arising from a Claim . . . against [Millennium] for a Wrongful Act occurring during the policy period of December 1, 2011 to December 1, 2012." (Wiygul Decl. Ex. 17 §§ I.C, I.F, Declarations 3A.) The parties negotiated for a specific amendment that expands the definition of a Claim to include a formal civil or criminal investigation of any Insured Person commencing by issuance of a subpoena. (Wiygul Decl. Ex. 17, Endorsement 9). Millennium has established that it received subpoenas during the policy period which detail a formal civil or criminal investigation. (Price Decl. Exs. B–G.) A letter from the DOJ attorney

explains the DOJ is "conducting a joint criminal and civil investigation of your client, Millennium, and its officers, employees and agents." (Wiygul Decl. Ex. 12.) Therefore, under the plain language of the Policy, Millennium's claim falls within the policy terms.

Allied World argues first that the subpoena endorsement expanding the definition of Claim applies only to the investigation of an insured person, not an entity like Millennium. Allied World points to the different language for a "formal civil or criminal investigation of an Insured Person" as distinguished from the language for a "formal administrative or regulatory investigation of an Insured" which identifies the Insured as a "person or entity" against whom a proceeding may be commenced. Even without the endorsement, the language of the Policy appears to include the DOJ subpoena as it involves a claim by the Department of Justice that Millennium has engaged in a wrongful act. However, the endorsement makes this crystal clear by adding that the definition of "claim" includes this exact situation where an Insured Person is under formal civil or criminal investigation and a subpoena is issued. The DOJ confirms that it is investigating Millennium "and its officers, employees and agents." Under Allied World's interpretation, the first paragraph of endorsement 9 would have no meaning because there is no "insured person" only an "insured entity." There is no genuine issue of fact that the parties meant to include this situation as a claim when it negotiated endorsement 9 to the Policy.

Allied next argues that earlier competitor lawsuits and *qui tam* actions are "related claims" under the "Related Claims" provision of the Policy and, therefore, all the prior lawsuits and *qui tam* actions and the current DOJ investigation should all be deemed a single Claim falling outside the Police period. However, as discussed below, there is no evidence before the court that the current DOJ investigation arises out of, results from or is the consequence of the same or related facts, circumstances, situations, transactions or events. There may be similar allegations between the earlier actions and the current DOJ investigation, but that does not mean the investigation

arises out of the earlier allegations.

Millennium has met its burden of showing that the claim falls within the Policy terms.  The question then arises whether Allied World has proven that any exclusion applies.  Allied World first argues that the "prior or pending litigation exclusion" applies because the current subpoena includes allegations arising out of, based upon, or attributable to the prior actions.  Allied World points to the language of the exclusion which excludes "any Claim alleging or derived from the same or essentially the same facts, or the same or related Wrongful Acts, as alleged in such pending or prior litigation." (Wiygul Decl. Ex. 17 § III.D.)

The subpoenas ask for a wide variety of non-specific documentary materials and state only that the DOJ is investigating Millennium for Federal health care offenses. Even assuming, as Allied World argues and as this Court believes is proper under *Federal Insurance Co. v. Raytheon, Co.*, 426 F.3d 491 (1st Cir. 2005), that the DOJ investigation is all one claim because it is one investigation, and need not be allocated into separate claims, there is no way to determine whether there is substantial overlap between the earlier lawsuits and this investigation.  The simple fact that the DOJ has requested copies of documents filed in prior lawsuits is not dispositive.  The investigation is shrouded in secrecy, and the allegations being investigated by the DOJ are listed broadly without specificity.  It is impossible to determine whether the investigation or allegations being investigated arise out of, are based upon, or are attributable to the prior actions.[1]

Allied World next argues the "prior noticed claims exclusion" bars coverage. Again, Allied World is unable to point to any evidence demonstrating the DOJ investigation is based upon or attributable to the same facts as any earlier claim reported under any policy.

---

[1] Even if an agreement is eventually reached between the DOJ and Millenium, this may not be dispositive as to the total allegations being investigated, as often an agreement is reached as to one cause of action and the remainder of the investigation remains confidential.

1    Allied World also argues that the "specific claims exclusion" bars recovery
2    because the subpoena arises out of and directly or indirectly results from the Ameritox,
3    the Aegis and the Cunningham actions.  Allied World has not and cannot make this
4    showing.

5    Since Allied World has failed to provide any evidence to support its burden of
6    showing the applicability of an exclusion, Millennium's motion for summary judgment
7    must be granted and Allied World's denied.

8    Allied World's final argument is that it has already paid all monies due under the
9    Policy because it paid Millennium $100,000 which is all Millennium is entitled to
10   recover under the "Regulatory Claims Coverage."  Although an argument can be made
11   that the DOJ subpoena is a claim for a regulatory wrongful act, the letter from the DOJ
12   attorney appears to expand the claim to include more than just a regulatory wrongful
13   act, including breaches of duty, misstatements or misleading statements, and violations
14   of HIPAA.  Insurance coverage is interpreted broadly to afford the greatest possible
15   protection to the insured.  Construing coverage broadly, Allied World is responsible
16   for coverage under the $5,000,000 maximum limit for "company Claims Coverage" and
17   "HIPAA Claims Coverage."

18   Finally, Allied World argues that, as a matter of law, summary judgment should
19   be granted on Millennium's claim for the breach of good faith and fair dealing.  The
20   reasonableness of an insurer's claims-handling conduct is generally a question of fact
21   to be determined by the jury.  *Chateau Chamberay Homeowners Ass'n v. Associated*
22   *Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001).  It can become a question of law where
23   the evidence is undisputed and only one reasonable inference can be drawn from the
24   evidence.  *Id.*  That is not the case here.  The evidence is disputed with regard to Allied
25   World's conduct at the outset of the case, and a jury could find that Allied World's
26   limitation of coverage to $100,000 was unreasonable and made in bad faith.  This is
27   ultimately a proper question for the jury.
28   //

## IV.   CONCLUSION & ORDER

For the foregoing reasons, Millennium's Motion for Summary Judgment (ECF No. 156) on Claims One (Declaratory Relief) and Two (Breach of Contract) is **GRANTED**.  Allied World's Motion for Summary Judgment (ECF No. 161) is **DENIED** in its entirety.  The parties are ordered to contact the Magistrate Judge within 14 days from the issuance of this order to set a trial date and related deadlines for Millennium's third claim for the breach of good faith and fair dealing.

**IT IS SO ORDERED.**

**DATED: September 30, 2015**

**Hon. Cynthia Bashant**
**United States District Judge**