1

2

3

4

5

6

7

8

9

10

11

12

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

13   MILLENNIUM LABORATORIES, INC.,

14                                      Plaintiff,

15        v.

16   ALLIED WORLD ASSURANCE
17   COMPANY (U.S.), INC.,

18                                      Defendant.

19

Case No. 12-cv-2280-BAS(KSC)

**ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION**

**[ECF No. 219]**

20        Based on purportedly newly available evidence regarding allegations

21   investigated by the U.S. Department of Justice, Defendant Allied World Assurance

22   Company (U.S.), Inc. ("Allied World") now moves for reconsideration of the Court's

23   September 30, 2015 Summary Judgment Order.  Plaintiff Millennium Laboratories,

24   Inc. ("Millennium") opposes.

25        The Court heard argument from the parties on February 17, 2016.  *See* Civ.

26   L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** Allied World's

27   motion for reconsideration.

28   //

## I.        INTRODUCTION

Back in 2012, when Millennium bought the insurance Policy at issue in this case,[1] it was facing problems.  Several competitors had filed private lawsuits and several whistle-blowers had filed *qui tam* actions against Millennium.  These lawsuits alleged that Millennium engaged in unlawful business practices, that it encouraged health care providers to submit false and/or fraudulent claims to health insurers and that it provided unlawful kickbacks to those health care providers.

Millennium understandably wanted insurance that would pay for any such lawsuits filed in the future.  Allied World, the insurance company that provided coverage in 2012, wanted to make sure it was not covering the proverbial burning building.  The result was the Policy, negotiated by top-notch lawyers, all trying to make sure their respective clients were protected.  Millennium wanted protection from future lawsuits.  Allied World wanted to exclude actions that had culminated in lawsuits already filed.

Along came the U.S. Department of Justice ("DOJ"), eager to jump on the illegal-activities allegations made in past lawsuits and interested in ferreting out any illegal activities—past and present—by Millennium.   The DOJ issued broad subpoenas, asking for a wide range of documents and listing a wide range of potential offenses.  Millennium turned to Allied World and asked for coverage in responding to these requests.

On September 30, 2015, this Court issued an Order Granting Millennium's and Denying Allied World's Motions for Summary Judgment.  (ECF No. 217.)  At that point in time, since the DOJ investigation was shrouded in Grand Jury investigation secrecy, it was impossible to determine whether the investigation or allegations being investigated arose out of, were based upon, or were attributable to prior actions or to

---

[1] The Forcefield Healthcare Organizations Directors and Officers Liability Policy No. 0307-1511 issued by Allied World to Millennium for the policy period of December 1, 2011 to December 1, 2012 ("Policy").

1    wholly new conduct.

2         On October 28, 2015, Allied World filed a Motion for Reconsideration based

3    on newly discovered evidence.  (ECF No. 219.)  Allied World bases the motion on

4    the Complaint filed by the DOJ against Millennium, which has now been unsealed,

5    and the Settlement Agreement reached between Millennium and the DOJ, which was

6    made public in mid-October 2015.[2]

7

8    **II.      THE SETTLEMENT AGREEMENT[3]**

9         The DOJ reached a settlement with Millennium and various Relators,

10   including Robert Cunningham ("Settlement Agreement").  (Def.'s RJN Ex. 2, ECF

11   No. 219-4.)  Among other actions, the Settlement Agreement settled the *qui tam*

12   action of *United States ex rel. Cunningham v. Millennium*, No. 09-12209 (D. Mass.

13   Dec. 29, 2009).  (*Id.*)

14        In the Recitals of the Settlement Agreement, "[t]he United States contends that

15   it has certain civil claims against Millennium arising from the submission of claims

16   to the Federal Health Care Programs from January 1, 2008 through May 20, 2015 for

17   . . . (1) excessive and unnecessary UDT [Urine Drug Testing] ordered by physicians

18   without an individualized assessment of patient need . . . [and] (2) UDT referred by

19   physicians who received free point-of-care drug testing supplies [illegal kickbacks]."

20   (Def.'s RJN Ex. 2, ECF No. 219-4.)

21   //

22   //

23

24   ───────────────

25        [2] Allied World requests that this Court take judicial notice ("RJN") of a wide variety of
     materials associated with this Settlement Agreement, including the unsealed Complaints,
26   Settlement Agreements, and press releases issued by the Department of Justice.  (ECF Nos. 219-3,
     219-4.)  Millennium does not oppose this request.  The Court will take judicial notice of the
27   Settlement Agreements and the unsealed Complaints.  Fed. R. Evid. 201.
          [3] This Court adopts and incorporates by reference the "Background" detailed in its
28   September 30, 2015 Summary Judgment Order (ECF No. 217) and only outlines here the
     information newly revealed in mid-October 2015.

## III.   LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure permits a district court to reconsider and amend a previous judgment based on newly discovered evidence. *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1022 (9th Cir. 2003).   To justify an amendment because of newly discovered evidence, Allied World must show: (1) the evidence was discovered after the court's judgment was issued: (2) that even with due diligence the evidence could not have been discovered earlier; and (3) "that the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would likely have been different."  *Id.*

Reconsideration is an "extraordinary remedy to be used sparingly in the interests of finality and conservation of judicial resources."  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted).  It should not be used as an opportunity to raise arguments that should have been raised earlier.  *Id.*

## IV.   DISCUSSION

### A.   Allied World Has Proven the Specific Claims Exclusion Applies.

Allied World has clearly established that the unsealed Settlement Agreement and Complaint were not discovered until mid-October, after the Court issued its Order at the end of September.  It has further shown that, despite its attempts to learn of the contents of the Settlement Agreement earlier, it was unsuccessful.  Thus, the only issue is whether, had the Court known of this information, the outcome would have been different.  Because the evidence is newly discovered, the Court will consider the Motions for Summary Judgment *de novo* and will not require Allied World to show "clear error" in the Court's original order. *See McDowell v. Calderon*, 197 F.3d 1253, 1254-55 (9th Cir. 1999).

The "Specific Claims Exclusion" in the Policy provides that "[n]o coverage will be available for Loss from any Claim based upon, arising out of, directly or

indirectly resulting from, in consequence of, or *in any way involving*" the Ameritox Action, the Aegis Action, and the Robert Cunningham Action.  (Wiygul Decl. Ex. 17, Endorsement 7, ECF No. 161-2 (emphasis added).)

A quick review of the three Actions listed in the Specific Claims Exclusion and a comparison of the Settlement Agreement makes it clear that this exclusion applies. *Ameritox v. Millennium*, No. 11-775 (M.D. Fla. Apr. 18, 2011) and *Ameritox v. Millennium*, No. 11-866 (S.D. Cla. Apr. 22, 2011) (collectively, "Ameritox Action") were lawsuits filed by a Millennium competitor alleging that "Millennium formed a business plan to increase its market share . . . through an improper and illegal scheme" including illegal kick-backs and encouraging false billings to Medicare.[4] (Def.'s MSJ RJN Ex. 5 ¶¶ 10-11, ECF No. 161-3; Def.'s MSJ RJN Ex. 11, ECF No. 161-4.)  These are exactly the same allegations listed in the Complaint filed by the DOJ against Millennium and Settlement Agreement entered into between the parties.

*Aegis Sciences Corp. v. Millennium*, No. 11-294 (M.D. Tenn. Mar. 29. 2011) ("Aegis Action") was an "action for injunctive relief, disgorgement of ill-gotten gains and damages caused by Millennium's numerous ongoing and constantly evolving schemes to defraud the federal and state health care programs . . . and private payors and insurers.  Millennium's panoply of schemes include illegal kickbacks, fee sharing arrangements and fraudulent, unnecessary and duplicative testing and billing practices."  (Def.'s MSJ RJN Ex. 7, Introduction, ECF No. 161-4.)  Again, these allegations are the same allegations referenced in the Settlement Agreement.

However, most telling is *United States ex rel. Cunningham v. Millennium*, No. 09-12209 (D. Mass. Dec. 29, 2009) ("Cunningham Action"), in which Robert Cunningham alleged Millennium violated the Federal False Claims Act, 31 U.S.C. § 3729(a), by using a model that "encourage[d] physicians to submit false claims to

---

[4] References to Allied World's request for judicial notice related to its summary-judgment motion will be abbreviated as "MSJ RJN" for the purposes of this order.

12cv2280

1   government and private health insurance programs."  (Wiygul Decl. Ex. 2 ¶ 16, ECF

2   No. 161-2.)  This is most telling because, now that the Settlement Agreement has

3   been unsealed, it is clear that the Department of Justice investigation and ensuing

4   subpoenas, involved, at least in some way, the Robert Cunningham Action because

5   it culminated in settlement of that Action.

6         Had the Court known of the Settlement Agreement at the time it issued its

7   Order regarding Summary Judgment Motions, its Order would have been different.

8   At the time the Order was issued, Allied World had failed to prove that the

9   Department of Justice investigation "in any way involved" any of the actions listed

10  in the specific claims exclusion.  They have now done so.

11

12        **B.      No DOJ Allegations Fall Outside the Specific Claims Exclusion.**

13        Millennium argues that, while the "Specific Claims Exclusion" might apply to

14  some aspects of the Department of Justice investigation, in fact the investigation and

15  the subpoenas were investigating far broader activities.  Thus, argues Millennium, if

16  the Court finds the "Specific Claims Exclusion" applies to some of the documentary

17  evidence requested by the Department of Justice, it does not apply to all.

18        In support of this argument, Millennium points to examples of DOJ allegations

19  it claims fall outside of the "Specific Claims Exclusion" including allegations that:

20  (1) some Millennium employees had created fake custom profiles; (2) Millennium

21  had a requirement that physicians order a minimum number of drug tests with each

22  order; (3) Millennium had engaged in witness intimidation and destruction of

23  evidence; and (4) Millennium made false representations to doctors about the

24  efficacy of some of the testing and that they would be sued in legal actions because

25  they didn't do enough testing.  However, a closer look at all of these examples shows

26  how each is still involved, at least in some way, with the three specified excluded

27  actions.

28  //

1    For example, in the DOJ Complaint, under the heading "Millennium Caused
2    Physicians to Order UDT That Was Not Reasonable and Necessary in Violation of
3    Medicare Requirements," the DOJ alleges that Millennium had a plan to direct
4    physicians to establish protocols that required dozens of drug tests, regardless of each
5    patients' individualized need or condition.  (Def.'s RJN Ex. 1 ¶ 88, ECF No. 219-3.)
6    Millennium accomplished this plan in a variety of ways—by having the doctors fill
7    out standing order forms that required a minimum number of drug tests or creating
8    fake custom profiles for these doctors (*id.* Ex. 2 ¶¶ 89-99); by telling the doctors they
9    would be subject to regulatory action if they did not order more tests (*id.* Ex. 1 ¶ 118);
10   and by making false representations to the doctors about "false negative" rates (*id.*
11   Ex. 1 ¶¶ 120-21).  Although Millennium's counsel attempts to couch this as separate
12   wrongs being investigated by the DOJ, in fact, this is exactly the same conduct that
13   is alleged in the Ameritox Action ("Millennium  formed a business plan to increase
14   its market share . . . through an improper and illegal scheme" including false billings
15   to Medicare); the Aegis Action (Millennium's "ongoing and constantly evolving
16   schemes" to defraud federal health care programs by "unnecessary and duplicative
17   testing and billing practices"); and the Cunningham Action (Millennium violated the
18   Federal False Claims act by encouraging doctors to submit false claims).

19   Even the witness-intimidation allegations, which involved a Power Point
20   presentation given by the Millennium CEO showing Millennium's competitors,
21   including Ameritox and Aegis, in body bags (Def.'s RJN Ex. 1 ¶ 181), were also
22   allegations made in the Ameritox Action.[5]  Finally, the allegations that Millennium
23   destroyed evidence had to do with emails Millennium instructed its sales
24   representatives to delete, again showing that it put pressure on sales representatives
25   to obtain and submit false drug testing.
26   //
27

28   [5] In the Ameritox Action, Ameritox added claims based on this Power Point presentation
and the depiction of Ameritox in body bags to its consolidated third amended complaint.

1    All of the DOJ allegations in the Complaint and the Settlement Agreement,

2    including those that Millennium's counsel argues are completely unrelated, are based

3    upon, arising out of, directly or indirectly resulting from, in consequence of or are in

4    some way involving the Ameritox, the Aegis, or the Cunningham Actions.

5    Therefore, the Specific Claims Exclusion applies.

6

7    **C.    The Duty To Advance Costs Argument Has Already Been Resolved.**

8    Finally, relying on *Scottsdale Insurance Co. v. MV Transportation*, 36 Cal. 4th

9    643 (2005), Millennium argues that, even if Allied World can prove today that the

10    Specific Claims Exclusion applies, because Allied World did not have the facts to

11    support this exclusion until the DOJ Complaint and Settlement Agreement became

12    public, any defense costs from 2011-2015 should have been advanced by Allied

13    World.

14    In *Scottsdale*, the court drew a distinction between a case where there is a duty

15    to defend because there is a potential for coverage with a case where there is not even

16    the potential for coverage.  In a case where there is a duty to defend because there is

17    a potential for coverage, that duty is extinguished once it is shown that no claim can

18    in fact be covered.  However, at that point, the duty to pay is extinguished

19    prospectively and not retroactively. *Id.* at 655.  In other words, an insurance company

20    may not recoup costs advanced under a duty to defend before it becomes clear that

21    the duty no longer exists.  On the other hand, where there is not even the potential

22    for coverage because the claims do "not even possibly embrace any triggering harm

23    of the specified sort with the policy period caused by an included occurrence," then

24    the insurance company does not have a duty to defend, and any costs advanced may

25    be recouped. *Id.*

26    There is one large problem with the parallels Millennium draws with

27    *Scottsdale*.  In this case, United States District Judge Marilyn L. Huff clearly found

28    that the "potential for coverage" does not apply and that Millennium must show that

1    the DOJ investigation is actually covered by the Policy.  (ECF No. 73.)  Thus, Judge

2    Huff concluded, Allied World had no duty to defend, just the duty to reimburse

3    Millennium for defense costs incurred that Millennium demonstrates are actually

4    covered by the Policy.

5         Since Millennium has failed to show that any defense costs are actually

6    covered by the Policy, and the "potential for coverage" standard is inapplicable,

7    *Scottsdale* is similarly inapplicable.

8

9    **V.   CONCLUSION & ORDER**

10        In light of the foregoing, the Court **GRANTS** Allied World's motion for

11    reconsideration.  (ECF No. 219.)  Consequently, the Court **GRANTS** Allied World's

12    Motion for Summary Judgment (ECF No. 161), **DENIES** Millennium's Motion for

13    Summary Judgment (ECF No. 156), and **ORDERS** the Clerk of the Court to enter

14    judgment in favor of Defendant Allied World and against Plaintiff Millennium.  The

15    Court also **DENIES AS MOOT** the parties' Joint *Ex Parte* Application to Reset

16    Pretrial and Trial Dates.  (ECF No. 218.)

17        **IT IS SO ORDERED.**

18

19    **DATED:  February 25, 2016**

20                            Hon. Cynthia Bashant
                                 United States District Judge

21

22

23

24

25

26

27

28